UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONTEREY BAY MILITARY HOUSING, LLC, MONTEREY BAY LAND, LLC, MEADE COMMUNITIES LLC, FORT BLISS/WHITE SANDS MISSILE RANGE HOUSING LP, RILEY COMMUNITIES LLC, FORT LEAVENWORTH FRONTIER HERITAGE COMMUNITIES, I, LLC, FORT LEAVENWORTH FRONTIER HERITAGE COMMUNITIES, II, LLC, CARLISLE/PICATINNY FAMILY HOUSING LP, BRAGG COMMUNITIES LLC, FORT DETRICK/WALTER REED ARMY MEDICAL CENTER LLC, PICERNE-FORT POLK FUNDING, LLC, RUCKER COMMUNITIES LLC, STEWART HUNTER HOUSING LLC, SILL HOUSING LLC, AETC HOUSING LP, AMC WEST HOUSING LP, LACKLAND FAMILY HOUSING, LLC, and VANDENBERG HOUSING LP,<br><br>                    Plaintiffs,<br><br>        -v-<br><br><br>AMBAC ASSURANCE CORPORATION, JEFFERIES MORTGAGE FINANCE, INC. JEFFERIES & COMPANY, INC., JEFFERIES LLC, JEFFERIES GROUP LLC, DANNY RAY, AND CHETAN MARFATIA,<br><br>                    Defendants. | CIVIL ACTION NO.: 19 Civ. 9193 (PGG) (SLC)<br><br>**OPINION AND ORDER** |

**SARAH L. CAVE**, United States Magistrate Judge.

## I.INTRODUCTION

Before the Court is Plaintiffs'[1] motion to strike Ambac's, the Jefferies Defendants', and

Ray's Unclean Hands Defense, or, in the Alternative, for a Protective Order (the "Motion to Strike"

(ECF No. 334)), and the cross-motion of Defendants Jefferies Mortgage Finance, Inc., Jefferies &

---

[1] Plaintiffs are Monterey Bay Military Housing, LLC, Monterey Bay Land, LLC, Meade Communities LLC, Fort Bliss/White Sands Missile Range Housing LP, Riley Communities LLC, Fort Leavenworth Frontier Heritage Communities I, LLC, Fort Leavenworth Frontier Heritage Communities, II, LLC, Carlisle/Picatinny Family Housing LP, Bragg Communities LLC, Fort Detrick/Walter Reed Army Medical Center LLC, Picerne-Fort Polk Funding, LLC, Rucker Communities LLC, Stewart Hunter Housing LLC, Sill Housing, LLC, AETC Housing LP, AMC West Housing LP, Lackland Family Housing, LLC, and Vandenberg Housing LP.

Company, Inc., Jefferies LLC, and Jefferies Group LLC (together, "Jefferies") for leave to file an amended answer ("Jefferies' Cross-Motion" (ECF No. 338)).   Following a conference on August 12, 2021, the Court denied the Motion to Strike, granted Jefferies' Cross-Motion, and explained that its reasoning would be set out in further detail in this Opinion and Order.  (ECF No. 352).

## II. BACKGROUND

### A.  Factual Background

#### 1.  Plaintiffs' claims

The factual background of this action is set out in detail in the Memorandum Opinion & Order issued by the Honorable Paul G. Gardephe on March 31, 2021.  See Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp., No. 19 Civ. 9193 (PGG), 2021 WL 1226984 (S.D.N.Y. Mar. 31, 2021) ("Monterey Bay I").  The Court incorporates that factual summary, and all defined terms.  Very briefly, Plaintiffs are eighteen "project entities" that operate, pursuant to the Military Housing Privatization Initiative of 1996 ("MHPI"), 16 privatized military housing projects (the "Projects") at 20 military bases throughout the United States.  Id. at *2.  The Projects "'collectively needed billions of dollars of long-term financing' for development and construction."  Id. at *2 (quoting Second Amended Complaint ("SAC") (ECF No. 256) ¶ 4).  Among the financial institutions that provided loan origination services for the Projects was non-party GMAC Commercial Mortgage Corporation ("GMAC"), of which Defendant Danny Ray was a managing director.  Id.  "Ray chose Defendant Ambac, an AAA-rated insurance company to insure, or 'credit enhance,' the load for the Fort Meade Project, thereby permitting GMAC to syndicate the loan by selling AAA-rated bonds."  Id. at *3.  Defendant Chetan Marfatia was

managing director of Ambac.  Id.  In 2009, Defendant Jefferies Mortgage Finance, Inc. ("Jefferies Mortgage") purchased Ray's military housing business from GMAC's successor, non-party Capmark, and Defendant Jefferies & Co. ("Jefferies & Co.") hired Ray and his team to continue the business.  Id. at *7.

Plaintiffs assert claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 et seq. ("RICO") and other state law theories, arising out of alleged fraud the Defendants committed in connection with financing the development and renovation of military housing projects.  (ECF No. 353 at 7).  Plaintiffs claim that, among other things, Defendants set "above-market credit spread on Project loans" that enable them to "realiz[e] secret profits based on that above-market interest rate," "manipulated the 'shadow ratings'" that Ray, GMAC, Ambac, and Marfatia "claimed were necessary for the Projects' credit enhancement," misrepresented that the ratings agencies required bond insurance and a surety bond on the Projects' loans, entered into "stealth" credit enhancement agreements with Ambac, and required the Projects to accept an "original issue discount" ("OID"), even though there was "no economic purpose" for doing so, thereby enabling "Ray and GMAC to make millions in profits on [] pre-closing bond sales."  Monterey Bay I, 2021 WL 1226984 at *4–6.

## 2.  The Investigations into the condition of the Projects

In each loan agreement for the Projects, the respective "Plaintiff pledged as collateral, inter alia, its interest in the land on which the military housing projects were intended to be developed, as well as the housing units and related amenities and infrastructure that [P]laintiffs would use the loan proceeds to build."  (ECF No. 338-2 at 146 ¶ 6).  "[S]everal factors, including the condition of the collateral and the borrower's ability and willingness to properly maintain the

collateral that would be pledged under the loan," were relevant to the lenders'—including Jefferies'—decision about what interest rate to offer on the loans to the Projects. (Id.) Jefferies' Mortgage, in particular, as part of the due diligence process on the two loans it issued, commissioned environmental studies to "assess[] how the properties had been maintained, and whether there were observable instances of mold, leaks, bugs, asbestos, or water contamination at the properties" that were to collateralize the loans. (Id.) Jefferies Mortgage also required the Plaintiff on each of the two loans in which it was involved, to:

> (i) represent that aside from issues disclosed as part of the environmental investigations, the borrower was in compliance with all environmental, zoning, and/or land use laws; (ii) agree that it would not commit waste or permit material impairment of the housing units, related amenities, and other assets that served as collateral; and (iii) agree to keep the premises in good repair.

(Id.) Jefferies maintains that it would not have entered into the loan transactions had it known Plaintiffs made false representations concerning the loans, or, at least, might have charged a higher interest rate. (See ECF No. 353 at 31.) Similarly, each contract between Plaintiffs and Ambac contained a "Security Instrument" that provided the lenders and Ambac "a security interest in the land, housing, and fixtures of the [P]rojects," permitting Ambac, in the event of a Plaintiff's failure to repay its loan, to "seek recourse under the Security Instruments . . . ." (ECF No. 342 at 11). Under these Security Instruments, "Plaintiffs promised . . . that they would 'not commit waste or permit material impairment or deterioration" of the Projects, but "have broken that promise by allowing the deterioration of their military housing [P]rojects . . . ." (Id. at 12). As a result of Plaintiffs' "mismanagement, negligence, and fraud," Jefferies asserts that Plaintiffs have lowered the values of the Project properties, "impairing Ambac's security interest," and "significantly increased the likelihood that Plaintiffs will default on their loans because of lost

rental income after soldiers vacate housing rendered uninhabitable by Plaintiffs' misconduct." (Id. (citing ECF No. 324 at 41–42).

In 2018 and 2019, news reports appeared regarding investigations by Congress, "the Air Force Office of Special Investigations, the Federal Bureau of Investigation, and the Government Accountability Office into the business practices of the developers backing the Plaintiffs, including [P]rojects managed by the Plaintiffs (the "Investigations")." (ECF No. 339 at 10; see ECF Nos. 341-1 – 341-9; 342 at 12–14).   The Investigations found that the "developers behind the Plaintiffs" (ECF No. 339 at 10) had "falsified maintenance records" to secure incentive fees, (ECF No. 341-7 at 2), engaged in a "history of neglect" of military housing resulting in "mold and other substandard conditions" that injured the military families who lived at Fort Meade and elsewhere.  (ECF No. 341-8 at 2–3; see ECF No. 341-8 at 3; 341-9 at 5).  Some of the families commenced lawsuits against the military housing contractors, alleging that their negligence resulted in poisoning and other injuries to the families.  (ECF Nos. 341-1 at 17; 341-8 at 2).  The dangerous conditions in some of the Projects may date as far back as the adoption of the MHPI in 1996.  (ECF No. 341-8 at 3).  Indeed, Plaintiffs do not dispute that most or all of the properties involved in the Projects have issues with lead paint and mold.  (ECF No. 353 at 11).

Jefferies Mortgage asserts that if it "had known the truth about the [developers'] inability (or unwillingness) to properly maintain the properties that they would use [Jefferies Mortgage's] funds to develop, [it] might: (i) never have made the loans in the first place; or (ii) have demanded that Sill and Bliss pay a higher interest rate to compensate [it] for the otherwise hidden risk associated with allowing the Plaintiffs to manage their collateral."  (ECF No. 339 at 11).

###### B. Procedural Background

On August 28, 2017, Plaintiffs filed the original complaint in this action in the Northern District of California (ECF No. 1).  See Monterey I, 2021 WL 1226984, at *9.  Ambac filed a motion, in which Marfatia and Jefferies joined, to transfer venue to this District pursuant to 28 U.S.C. § 1404(a) (the "Transfer Motion").  Id. (citing ECF Nos. 39, 47, 91).  While the Transfer Motion was pending, Plaintiffs filed an amended complaint (the "FAC"), which the Defendants moved to dismiss (the "Motions to Dismiss").  (ECF Nos. 60, 62–64, 66, 71).  On January 2, 2018, the California court denied the Transfer Motion.  (ECF No. 108).  On July 17, 2018, the California court granted Defendants' Motions to Dismiss for lack of personal jurisdiction, except as to the Monterey Bay Plaintiffs' claims against Ambac.  (ECF No. 147 at 6–11).  The California court also held, under Fed. R. Civ. P. 12(b)(6), that Plaintiffs failed to state a RICO claim, and granted Plaintiffs leave to amend.  (Id. at 13–24).

On January 16, 2019, Plaintiffs filed the SAC, (ECF No. 220), seeking, in addition to compensatory and treble damages, equitable relief in the form of "[r]elieving [them], in whole or in part, from a continuing obligation to make payments to Ambac or its bond insurers," "[d]eclaring any purported disclaimer by Jefferies Mortgage of its fiduciary duty to the Sill and Bliss Projects null and void," and "[d]isgorgement of all profits and fees, both disclosed and undisclosed."  (ECF Nos. 210-3 at 83; 353 at 14).  Defendants renewed their Motions to Dismiss. (ECF Nos. 223–28).  On September 26, 2019, the California court denied the renewed Motions to Dismiss and transferred the action to this Court.  (ECF No. 261 (the "September 26, 2019 Order"). On arriving in this District, Defendants moved for reconsideration of the September 26, 2019 Order.  (ECF Nos. 268; 269; 271; 273 (the "Reconsideration Motions")).

On March 31, 2021, Judge Gardephe issued Monterey I, granting the Reconsideration Motions only "to the extent that (1) Plaintiffs' breach of fiduciary duty claims against Defendants Ambac and Marfatia [were] dismissed; (2) aiding and abetting breach of fiduciary duty claims premised on Defendants Ambac and Marfatia's breach of fiduciary duty [were] dismissed; and (3) Plaintiffs Sill Housing LLC and Lackland Family Housing LLC's RICO claims against Defendants Ambac and Marfatia [were] dismissed." Monterey I, 2021 WL 1226894, at *41.

In April 2021, Jefferies, Ambac, and Ray filed answers to the SAC in which they asserted, inter alia, the Unclean Hands Defense and in pari delicto. (ECF Nos. 324 at 41–42; 325 at 145 ¶¶ 6–7; 326 at 50)).[2] On May 6, 2021, Plaintiffs filed a letter-motion for a conference regarding their anticipated Motion to Strike, in response to which Judge Gardephe set a briefing schedule. (ECF Nos. 329, 333). On June 14, 2021, Plaintiffs filed the Motion to Strike, (ECF No. 334), and Jefferies filed its opposition to the Motion to Strike along with its Cross-Motion. (ECF Nos. 338; 339). In its Cross-Motion, Jefferies seeks to expand the allegations in support of its Unclean Hands Defense, such as by adding detail concerning Plaintiffs' representations about the collateral for the loans and the Investigations. (ECF No. 338-2 at 146–47). Ray and Ambac also opposed the Motion to Strike. (ECF Nos. 340; 342). On June 17, 2021, Judge Gardephe amended the order of reference to include the Motion to Strike. (ECF No. 345).

On August 12, 2021, the Court held a conference on the Motion to Strike and Jefferies' Cross-Motion. (ECF Nos. 346; 353). At the conclusion of the conference, the Court denied the Motion to Strike and granted Jefferies' Cross-Motion, with this Opinion and Order to follow. (ECF No. 352). The Court also directed the parties to meet and confer to submit a revised proposed

---

[2] Marfatia did not assert either defense. (ECF No. 323 at 32–34).

Case Management Plan and to attempt to resolve Jefferies' letter-motion concerning alleged deficiencies in Plaintiffs' damages disclosures.  (Id.; see ECF No. 351).

### 3.  Defendants' discovery requests to Plaintiffs

On November 29, 2019, Jefferies served document requests (the "Requests") on each Plaintiff, and non-party subpoenas on "each of the sophisticated property developers that stand behind the Plaintiffs."  (ECF No. 339 at 11).  The Requests sought, inter alia, (i) Plaintiffs' records concerning loans issued by GMAC and Capmark, and (ii) records relating to the Investigations.  (Id. at 11–12; see ECF No. 336-1 at 3 (similar request by Ambac)).  Jefferies contends that "Plaintiffs have refused to even consider searching for, or otherwise turning over, documents relating to the Investigations."  (ECF No. 339 at 12; see ECF No. 344 at 23).  Plaintiffs assert that they have produced over two million pages of documents, including documents relating to the environmental reviews conducted during the due diligence on the loans.  (ECF No. 353 at 8, 11–12).

## III. DISCUSSION

### A.  Motion to Strike

#### 1.  Legal standards

Pursuant to Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "Motions to strike serve 'to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.'"  Lokai Holdings LLC v. Twin Tiger USA LLC, 306 F. Supp. 3d 629, 645 (S.D.N.Y. 2018) (quoting Sun Microsys., Inc. v. Versata Enters., Inc., 630 F. Supp. 2d 395, 402 (D. Del. 2009)).  Motions to strike are "generally disfavored and will not be granted

'unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense.'"  Id. (quoting William Z. Salcer, Panfield, Edelman v. Envicon Equities Corp., 744 F.2d 935, 939 (2d Cir. 1984), rev'd on other grounds, 478 U.S. 1015 (1986)).

Courts apply a three-pronged test to determine whether to strike an affirmative defense: "(1) there must be no question of fact that might allow the defense to succeed; (2) there must be no substantial question of law that might allow the defense to succeed; and (3) the plaintiff must be prejudiced by the inclusion of the defense."  Specialty Minerals, Inc. v. Pluess-Staufer AG, 395 F. Supp. 2d 109, 111 (S.D.N.Y. 2005); see GEOMC Co. v. Calmare Therapeutics Inc., 918 F.3d 92, 96 (2d Cir. 2019) (same).  The "party seeking to strike an affirmative defense bears the burden of establishing" that this test has been met.  839 Cliffside Ave. LLC v. Deutsche Bank Nat'l Trust Co., No. 15 Civ. 4516 (SIL), 2016 WL 5372804, at *9 (E.D.N.Y. Sept. 26, 2016) (citing Sibley v. Choice Hotels Int'l, Inc., 304 F.R.D. 125, 132 (E.D.N.Y. 2015)).  The decision whether to grant a motion to strike an affirmative defense is "left to the district court's discretion."  Equal Emp. Opp. Comm'n v. Bay Ridge Toyota, Inc., 327 F. Supp. 2d 167, 170 (E.D.N.Y. 2004).

"The unclean hands defense is an 'ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief.'"  Specialty Minerals, 395 F. Supp. 2d at 112 (quoting Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814 (1945)).  It "is a defense only to equitable, not legal, claims."  Chevron Corp. v. Salazar, Nos. 11 Civ. 3718 & 11 Civ. 691 (LAK), 2011 WL 3628843, at *6 (S.D.N.Y. Aug. 17, 2011) (collecting cases).  "The unclean hands doctrine applies only where the misconduct alleged as the basis for the defense 'has immediate and necessary relation to the equity that

[plaintiff] seeks in respect of the matter in litigation.'" Specialty Minerals, 395 F. Supp. 2d at 112 (quoting Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 245 (1933)).  In the Second Circuit, the unclean hands defense is a narrow one.  See Warner Bros., Inc. v. Gay Toys, Inc., 724 F.2d 327, 334 (2d Cir. 1983) (holding that plaintiff's alleged false accusation of copyright infringement did not bar plaintiff's trademark infringement claim); A.H. Emery Co. v. Marcan Prods. Corp., 389 F.2d 11, 18 (2d Cir. 1968) (explaining that alleged violations of laws "'unrelated to the claim in which it is asserted as a defense [do] not constitute unclean hands'") (quoting Rep. Molding Corp. v. B.W. Photo Util., 319 F.2d 347, 349 (9th Cir. 1963)); Maatschappij Tot Exploitatie Van Rademaker's Koninklijke Cacao & Chocoladefadrieken v. Kosloff, 45 F.2d 94, 96 (2d Cir. 1930) (explaining that unclean hands doctrine applies only to "wrongdoing directly connected with the right sought to be vindicated" and does not prevent plaintiff from seeking "vindication of other[,] though closely connected, rights"); Gidatex S.r.L. v. Campeniello Imports, Ltd., 82 F. Supp. 2d 126, 131–32 (S.D.N.Y. 1999) (holding that unclean hands defense based on agreement between the parties did not directly relate to, and therefore did not bar, trademark infringement claims).  "'[F]actually similar misconduct alone is [not] sufficient' to create the nexus between the doctrine and the subject matter of the litigation." Lokai Holdings, 306 F. Supp. 3d at 646 (quoting Specialty Minerals, 395 F. Supp. 2d at 112–13).  Rather, the misconduct on which the unclean hands defense is based must be "'immediate[ly] and necessar[ily]' related to the right in suit." Specialty Minerals, 395 F. Supp. 2d at 112 (quoting Keystone, 290 U.S. at 245).

### 2.  The Parties' Arguments

#### a.  Plaintiffs

Plaintiffs argue that the Unclean Hands Defense, as pled, is "inadequate as a matter of law and should be stricken at the outset to avoid derailing this case into collateral issues."  (ECF No. 344 at 13–14).  Plaintiffs maintain that their RICO claims are not subject to the Unclean Hands Defense, and even if it were, Defendants have failed to allege "a strict nexus between [Plaintiffs'] claims and the alleged inequitable conduct," that is, "the wrongdoing must involve precisely the same conduct giving ris[e] to the suit."  (Id. at 14).  Plaintiffs rely on several cases from other Circuits in support of their assertion that "an 'overwhelming majority' of district courts to consider the issue have concluded that 'the defense of unclean hands is not available in civil RICO actions.'"  (Id. at 15 (quoting Smithfield Foods, Inc. v. United Food & Com. Workers Int'l Union, 593 F. Supp. 2d 840, 847 (E.D. Va. 2008) (internal citation omitted)).  Plaintiffs, however, acknowledged that there is no Second Circuit case precluding the Unclean Hands Defense in a case such as this involving RICO and other claims.  (ECF No. 353 at 13–14).  To the extent that Ambac in its Answer, or Jefferies in its Proposed Amended Answer, rely on Plaintiffs' alleged inadequate maintenance of the Projects, Plaintiffs assert that such conduct was unrelated to the financing and "necessarily occurred after the financing fraud began."  (ECF No. 344 at 20).  Finally, Plaintiffs point out that Ambac "does not attempt to plead bad faith."  (Id. at 21).

#### b.  Defendants

Defendants respond that the Unclean Hands Defense is viable, given Plaintiffs' request for forms of equitable relief and assertion of several state law, non-RICO claims.  (ECF Nos. 339 at 19–20; 342 at 18–21).  Pointing to the standard for a motion to strike, Jefferies argues that it

has alleged sufficient facts to show "that Plaintiffs were 'guilty of immoral, unconscionable conduct,' upon which [Defendants] relied, that is 'directly related to the subject matter in litigation[,] and the party seeking to invoke the doctrine was injured by such conduct.'"  (ECF No. 339 at 18 (quoting Genger v. Genger, 76 F. Supp. 3d 488, 502 (S.D.N.Y. 2015) (internal citation omitted)).  Jefferies argues that, "[h]ad Plaintiffs been forthright about their inability to manage assets for the benefit of their lenders, [Jefferies Mortgage] could have insisted that Plaintiffs compensate them for such risk by paying a higher interest rate," but instead, was "forced to incur unnecessary risk, and forgo the revenue that it would otherwise have received, because of Plaintiffs' misrepresentations."  (Id. at 19).

Similarly, Ambac contends that "Plaintiffs have harmed it by impairing its security interest in the properties," and Plaintiffs' misconduct, or their knowledge of the hazardous conditions, may have occurred "long before" 2018 and may have been concealed "when they entered into their transactions with Defendants."  (ECF No. 342 at 22).  At least, Ambac contends, the Unclean Hands Defense should not be stricken yet, given that there are "unresolved factual questions regarding the extent of the maintenance record fraud, including who perpetrated it, where it occurred, and whether the actions of [] 'certain employees' are attributable to Plaintiffs themselves."  (Id. at 26).

Ray adds that "Plaintiffs engaged in misconduct impacting the collateral," which "is part and parcel of the financing agreement, and its value—or the diminution thereof—is directly relevant to Plaintiffs' claims, including the assessment of any purported damages . . . ."  (ECF No. 340 at 6–7).  He argues that Plaintiffs have not shown that "there is no question of fact that might allow" the Unclean Hands Defense to succeed following fact discovery, nor that "there is

no question of law that might allow the [] defense to succeed" given that "Plaintiffs indisputably seek equitable relief." (Id. at 11, 15).  Ray also contends that he has plausibly pled a legally valid Unclean Hands Defense, but asks for leave to amend in the alternative.  (Id. at 16).

### 3.  Application

#### a.  The Unclean Hands Defense is not barred in this action.

As an initial matter, the Court disagrees with Plaintiffs' contention that an Unclean Hands Defense is not viable in this action.  (ECF No. 344 at 15–17).  It is correct that "unclean hands is an equitable defense that does not apply to actions at law that seek money damages." JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., 386 F. Supp. 2d 461, 477 (S.D.N.Y. 2005).  Here, however, it is undisputed that Plaintiffs also seek several forms of equitable relief, including disgorgement and declarations that Plaintiffs no longer have to pay Ambac or its bond insurers and that Jefferies Mortgage may not disclaim its fiduciary duty.  (ECF Nos. 210-3 at 85; 353 at 14).  As Plaintiffs acknowledged, the Second Circuit has not precluded the Unclean Hands Defense in a case such as this involving RICO and other claims.  (ECF No. 353 at 13–14).  Given Plaintiffs' decision to assert claims seeking equitable relief, they remain subject to defenses applicable to such claims, including the Unclean Hands Defense.  See TufAmerica, Inc. v. Codigo Music LLC, 162 F. Supp. 3d 295, 329 (S.D.N.Y. 2016) (declining to strike Unclean Hands Defense asserted against claims for declaratory and injunctive relief where genuine issues of material fact existed as to plaintiff's conduct).  Accordingly, Plaintiffs have not shown that "there is no question of law which might allow the defense to succeed." GEOMC, 918 F.3d at 96.

Second, it does not "appear[] to a certainty" that Plaintiffs will defeat the Unclean Hands Defense under "any state of [] facts which could be proved." Antolini v. Nieves, No. 19 Civ. 7645

(VSB) (RWL), 2020 WL 5117915, at *1 (S.D.N.Y. Aug. 31, 2020) (internal citation omitted).  Ambac has alleged that Plaintiffs "committed waste, and permitted material impairment or deterioration of the properties, through their mismanagement, negligence, and fraud," resulting in lowered value of the properties that has "impair[ed] Ambac's security interest" and increased the risk of default.  (ECF No. 342 at 12; see ECF No. 324 at 41–42;).  Similarly, in its Proposed Amended Answer, Jefferies contends that Plaintiffs made material misrepresentations about "their ability and willingness to properly maintain the collateral," and that, had Jefferies known of the truth, it might have mitigated the risk by requiring Plaintiffs to pay a higher interest rate. (ECF No. 338-2 at 147 ¶ 6).  If true, Plaintiffs' misrepresentations and misconduct in relation to the collateral was "directly related" to the financing transactions that are the subject matter of this action.  TufAmerica, 162 F. Supp. 3d at 328–29.  And, Jefferies and Ambac have alleged that Plaintiffs' misrepresentations have impaired their security interests in the collateral, although the scope and severity of that impairment would be the subject of discovery.  (ECF Nos. 342 at 26; 324 at 41–42; 338-2 at 146–47 ¶ 6).  Taken together, these allegations, which the Court must presume as true for purposes of the Motion to Strike, United States v. E. River Hous. Corp., 90 F. Supp. 3d 118, 124 n.4 (S.D.N.Y. 2015), could establish wrongful activity by Plaintiffs related to the financing transactions that are the subject of their claims, as to which an Unclean Hands Defense may be viable.  See 839 Cliffside Ave., 2016 WL 5372804, at *11 (denying motion to strike where defendant sufficiently alleged plaintiff's unclean hands in connection with mortgage transaction).

Third, Plaintiffs have not shown the requisite prejudice if the Unclean Hands Defense remains in this case.  GEOMC, 918 F.3d at 96.  Plaintiffs contend that the Unclean Hands Defense will result an "extreme increase in [the] scope and expense of discovery . . . ."  (ECF No. 344 at

22).  In the Motion to Strike, Plaintiffs did not quantify this burden, nor were they able to in response to the Court's questioning during the hearing.  (ECF No. 353 at 9–11).   A generic speculation about potential additional discovery does not justify striking the Unclean Hands Defense, however.  See Tardif v. City of New York, 302 F.R.D. 31, 34 (S.D.N.Y. 2014) (denying motion to strike affirmative defense where plaintiff's speculation about "longer and more expensive discovery" did not demonstrate prejudice); Duling v. Gristede's Operating Corp., 265 F.R.D. 91, 100–101 (S.D.N.Y. 2010) (explaining that "need for new discovery is not sufficient to constitute undue prejudice on its own").  To mitigate any burden of discovery on the Unclean Hands Defense, the Court offered several suggestions to the parties, including the re-production of documents produced in the related litigations, production of summary reports from the Investigations, and the Court's assistance in avoiding "a far-ranging search of file drawers of 20-year-old maintenance forms."  (ECF No. 353 at 47; see id. (offering to "figure out a way that we can manage this process so that it doesn't become too much of a frolic and a detour but that the [D]efendants can get the information that they need without it being too much of a burden on the [P]laintiffs.")).   Furthermore, the Court has only recently adopted the parties' Case Management Plan, which sets a fact discovery deadline of July 29, 2022, and no date has been set for trial.  (ECF No. 366 ¶¶ 6, 13).  Accordingly, including the Unclean Hands Defense will not impose any prejudice on Plaintiffs in delaying this action for trial.

Because Plaintiffs have failed to satisfy their burden to establish that the Unclean Hands Defense should be stricken at this stage of the action, the Motion to Strike is DENIED.

### B. **Motion for a Protective Order**

#### 1. **Legal standard**

The Federal Rules of Civil Procedure establish the scope of discovery as the following:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to the party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "Rule 26 gives a district court 'broad discretion . . . to impose limitations or conditions on discovery . . . which extends to granting or denying motions to compel or for protective orders on 'just terms.'" Coty v. Cosmopolitan Cosms., Inc., No. 18 Civ. 11145 (LTS) (SLC), 2020 WL 3317204, at *1 (S.D.N.Y. June 18, 2020) (quoting Capstone Logistics Holdings, Inc. v. Navarrete, No. 17 Civ. 4819 (GBD) (BCM), 2018 WL 6786237, at *8 (S.D.N.Y. Dec. 13, 2018)). "A district court has broad latitude to determine the scope of discovery and to manage the discovery process." EM Ltd. v. Rep. of Arg., 695 F3d 201, 207 (2d Cir. 2012).

Under Federal Rule of Civil Procedure 26(c), "[a] party . . . may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). This rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984). "The burden of showing good cause for the issuance of a protective order falls on the party seeking the order." Rep. of Turkey v. Christie's Inc., 312 F. Supp. 3d 385, 388 (S.D.N.Y. 2018) (citing Brown v. Astoria Fed. Sav. & Loan Ass'n, 444 F. App'x 504, 505 (2d Cir. 2011)). Good cause under Rule 26(c) requires "a particular and specific

demonstration of fact, as distinguished from stereotyped and conclusory statements." Jerolimo v. Physicians for Women, P.C., 238 F.R.D. 354, 356 (D. Conn. 2006) (internal citations omitted). "Ultimately, the appropriateness of protective relief from discovery depends upon a balancing of the litigation needs of the discovering party and any countervailing protectible interests of the party from whom discovery is sought." Peddy v. L'Oreal USA Inc., No. 18 Civ. 7499 (RA) (JLC), 2019 WL 3926984, at *2 (S.D.N.Y. Aug. 20, 2019) (internal citations omitted); see Winfield v. City of New York, No. 15 Civ. 5236 (LTS) (KHP), 2018 WL 840085, at *4 (S.D.N.Y. Feb. 12, 2018) (explaining that "'the court ultimately weighs the interests of both sides in fashioning an order'") (quoting Duling, 266 F.R.D. at 71).

### 2. Application

The Court finds that Plaintiffs, at this juncture, have not demonstrated good cause for a protective order precluding all discovery concerning "the physical condition or maintenance of the [P]rojects, work orders, and related investigations or lawsuits." (ECF No. 344 at 23). The Unclean Hands Defense remains in this action (see § III.A.3 supra), and what Plaintiffs knew about hazardous conditions at the Projects, and when they knew about them in relation to their representations to Defendants as part of the financing transactions, are relevant. See TufAmerica, 162 F. Supp. 3d at 328–29 (describing genuine issues of material fact concerning plaintiff's conduct in mortgage transaction); 839 Cliffside Ave., 2016 WL 5372804, at *11 (describing allegations of plaintiff's bad faith in connection with real estate transaction).

In addition, Plaintiffs have not articulated a "clearly-defined and significant harm" from discovery about the conditions at the Projects. See Bailey v. City of New York, No. 14 Civ. 2091 (JBW) (VMS), 2015 WL 4523196, at *10 (E.D.N.Y. July 27, 2015). They have not enumerated the

number of documents or custodians that might need to be searched regarding the conditions at the Projects, nor offered anything more than speculation about the extent of the burden of this discovery.  See Levy v. Ina Life Ins. Co. of N.Y., No. 05 Civ. 10310 (GEL), 2006 WL 3316849, at *2 (S.D.N.Y. Nov. 14, 2006) (denying motion for protective order where party offered only "generalized and conclusory assertions that courts have held insufficient to show good cause for a protective order").

Finally, to address any possible concern about burden, the Court instructed Plaintiffs to ascertain whether stipulations of fact in the related litigations or summary reports in the Investigations might exist to narrow the scope of searches, meet and confer with Defendants, and raise any disputes with the Court, which offered to assist in managing the process.   (ECF No. 353 at 47–48).   Plaintiffs indicated their willingness to cooperate with that proposed approach.  (Id. at 46).

Accordingly, Plaintiffs' request for a protective order is DENIED WITHOUT PREJUDICE.

**C.  Jefferies' Cross- Motion**

**1.  Legal standard**

Federal Rule of Civil Procedure 15 provides that a court "should freely give leave" to amend a pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Rule encourages courts to determine claims "on the merits" rather than disposing of claims or defenses based on "mere technicalities."  Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000).  The Second Circuit has explained that "district courts should not deny leave [to amend] unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility."  Friedl v. City of New York, 210 F.3d 79, 87 (2d Cir. 2000).  Courts in this District have held that

denial of a motion to amend is appropriate where "(1) the movant is guilty of undue delay, (2) the movant has acted in bad faith, (3) the amendment would be futile, or (4) the amendment would prejudice the opposing party." Procter & Gamble Co. v. Hello Prods., LLC, No. 14 Civ. 649 (VM) (RLE), 2015 WL 2408523, at *1 (S.D.N.Y. May 20, 2015) (citing State Tchrs. Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)); see Williams v. Citigroup Inc., 659 F.3d 208, 213–14 (2d Cir. 2011) (per curiam) (reiterating Supreme Court precedent explaining proper grounds for denying motion to amend as "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment").

While a party may move to amend under Rule 15(a)(2) at any stage of a litigation, when "a proposed amendment is based on 'information that the party knew or should have known prior to the deadline [to file an amendment], leave to amend is properly denied.'" Hyo Jung v. Chorus Music Studio, Inc., No. 13 Civ. 1494 (CM) (RLE), 2014 WL 4493795, at *2 (S.D.N.Y. Sept. 11, 2014) (citing Soroof Trading Dev. Co. v. GE Microgen, Inc., 283 F.R.D. 142, 147 (S.D.N.Y. 2012)); see Procter & Gamble Co., 2015 WL 2408523, at *2–3 (finding undue delay and prejudice where party was aware of information well before deadline to amend pleadings but waited ten months to move to amend).

Prejudice occurs when an amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." Soroof Trading, 283 F.R.D. at 147 (citing Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)).

An amendment is futile if it would not survive dismissal under Rule 12(b)(6) because it fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Brodt v. City of New York, 4 F. Supp. 3d 562, 567 (S.D.N.Y. 2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  Facial plausibility exists when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

### 2.  Application

Plaintiffs' only argument in opposition to Jefferies' and Ray's request for leave to amend their Unclean Hands Defense is that it would be futile, insofar as they cannot allege "a sufficient nexus between (i) fraud in the origination of loan documents and (ii) miscellaneous maintenance issues that arose a decade later."  (ECF No. 335 at 8).  As discussed above, however, the hazardous condition at the Projects may date back as far as 1996, (ECF No. 341-8 at 3), and therefore "what Plaintiffs knew about the condition of the properties, and whether Plaintiffs concealed their knowledge of these issues from Ambac [and the other Defendants] when promising the property and housing as security[]" are valid questions of fact to be explored in fact discovery.  (ECF No. 342 at 27).  Furthermore, the media reports Defendants have submitted indicate that the conditions were far from "miscellaneous maintenance issues" as Plaintiffs characterize them — the reports include descriptions of lead poisoning, mold, asbestos, and pest infestation, about which maintenance records were deliberately falsified.  (See, e.g., ECF Nos. 341-1 ("Special Report: Children poisoned by lead on U.S. Army bases as hazards ignored"); 341-4 (describing "systematically falsified" maintenance logs); 341-5 (describing splintering asbestos flooring, vermin infestations, and falsified maintenance records)).  The injuries to the military families from

these hazardous conditions are, appropriately, the subject of other, on-going litigations. Nevertheless, Plaintiffs' knowledge of and involvement in these conditions in relation to the representations they made to Defendants in the financing transactions on which Plaintiffs' claims are based are, appropriately, the subject of discovery in this litigation.  Accordingly, the Court finds that Jefferies' and Ray's amendments of the Unclean Hands Defense would not be futile, and therefore, the Cross-Motion is GRANTED.

### IV. CONCLUSION

For the reasons set forth above, the Court rules as follows:

(1)  Plaintiffs' Motion to Strike is DENIED;

(2)  Plaintiffs' alternative request for a protective order is DENIED WITHOUT PREJUDICE; and

(3)  Jefferies' Cross-Motion and Ray's request for leave to amend are GRANTED.

Dated:      New York, New York
            September 14, 2021

SO ORDERED.

_____
SARAH L. CAVE
United States Magistrate Judge