**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

December 14, 2022

**VIA ECF**
Honorable Sarah L. Cave
United States Magistrate Judge
United States District Court
500 Pearl Street
New York, New York 10007-1312

Re: *Monterey Bay Military Housing LLC, et al. v. Ambac Assurance Corporation, et al.*,
No. 19-cv-09193 (PGG) (SLC)

Dear Judge Cave:

I write on behalf of Ambac Assurance Corporation ("Ambac") in advance of the December 19, 2022, conference. In addition to the privilege issues raised in Ambac's letters dated November 29 and December 9, 2022, and its pre-motion conference letter concerning Malvern Capital Partners' non-compliance with Ambac's subpoena dated December 12, 2022, Ambac seeks Court intervention regarding the issues described below. Ambac is prepared to address any or all of the above matters at Monday's conference if the Court wishes to discuss them.

**I.    Fed. R. Civ. P. 37(c)(1) Bars Plaintiffs' New Categories of Damages**

On September 20, 2022, Plaintiffs asserted three new categories of damages, in a supplemental response to an interrogatory from the Jefferies defendants: (1) "damages related to swap rate contracts," (2) "damages suffered as a result of Defendants' utilization of shadow ratings," and (3) "Hedge Losses." Together, these new categories account for an increase of approximately 37 percent in Plaintiffs' alleged compensatory damages, and they are each based on a previously undisclosed theory of harm. On November 4, 2022, Ambac sent a letter to Plaintiffs objecting to the new categories. Plaintiffs responded on December 1. Ambac met and conferred with Plaintiffs on December 6; the parties were unable to reach agreement. Ambac intends to file a Letter-Motion, or, if the Court would prefer, a formal motion under Rule 37(c)(1) regarding this issue. *See* Court's Individual Practices in Civil Cases II.C.2, II.C.5.

Rule 37(c)(1) bars Plaintiffs' new categories of damages because their disclosure was untimely under Rule 26(a) and including them now would prejudice Ambac at this late stage of fact discovery. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . required by Rule 26(a) . . . , the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."). Plaintiffs concede that they have had access to the documents on which they base their new categories of damages for months, if not years. The new categories have no basis in the operative Second Amended Complaint, Plaintiffs' Initial Disclosures (made on January 9, 2018), or Plaintiffs' prior interrogatory responses. Rule 26(a)(1) requires parties to disclose their categories of damages within 14 days of the Rule 26(f) conference, or otherwise as ordered by the Court, and a party's

failure to investigate its case does not excuse that party from its disclosure obligations. Fed. R. Civ. P. 26(a)(1)(E); *see also* Fed. R. Civ. P. 26(e). Yet, Plaintiffs did not disclose the new categories until September 2022, more than four years after their initial disclosures, in violation of their Rule 26 disclosure obligations. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) (noting that the failure to identify a "category" of damages violates Rule 26 because it deprives a defendant of the required notice); *Oceans Cuisine, Ltd. v. Fishery Prods. Int'l, Inc.*, 2006 WL 1071578, at *5 (E.D.N.Y. Apr. 21, 2006) (holding that a plaintiff could not use supplemental interrogatory responses to assert novel theory of damages, where plaintiff "belatedly consulted with . . . an advertising company, and later attempted to assert damages theories based upon that consultation"); *Austrian Airlines Oesterreichische Lufverkehrs Ag v. UT Finance Corp.*, 2005 WL 977850, at *2 (S.D.N.Y. April 28, 2005) (precluding theory of damages disclosed two weeks before the close of discovery because, "even if plaintiff could not calculate its damages at the time of its initial disclosure . . . , there is no reason that it did not disclose its [new] damage[s] *theory*"). Ambac also intends to seek alternative sanctions available under Rule 37.

## II.     Ambac's *Touhy* Requests to the Military

Earlier this fall, Ambac issued three *Touhy* letters to the U.S. Army and one to the U.S. Air Force seeking the production of documents and the deposition testimony of General Edward Daly, Commanding General, United States Army Materiel Command, and Ian "Sandy" Clark, Chief of Asset Management at the U.S. Army Office of the Assistant Chief of Staff for Installation Management. Each letter remains outstanding. Moreover, the U.S. Army has indicated that only 200 or so responsive documents have been identified and that they are in the custody of the Army Corps of Engineers with the potential exception of custodial files of Barry Scribner, a Jones Lang LaSalle witness. The Army Corps of Engineers indicated that it made its initial production of documents today, December 14, 2022.

Given the surprisingly small volume of documents located by the Corps of Engineers, Ambac requested information regarding whether and when a litigation hold was instituted, but the Army has not provided such information. In addition, the Air Force has not responded to Ambac's *Touhy* request. As to the requested depositions, the Army previously authorized Mr. Clark to be deposed at his discretion but recently indicated that it may reconsider this authorization. Mr. Clark's testimony is essential given his involvement in the early stages of the MHPI program and his knowledge of military oversight and approval practices. With respect to General Daly, the Army has refused to authorize his deposition or offer a substitute. In his role at the head of Army Materiel Command, General Daly was involved in investigating Plaintiffs' property maintenance failures and therefore has knowledge related to, among other things, Defendants' unclean hands defense.

After multiple discussions with Army representatives in efforts to resolve these issues, Ambac requests the Court's intervention requiring: (1) the Army to immediately disclose whether and when a litigation hold was instituted; (2) both military branches to produce all documents responsive to Ambac's *Touhy* requests by no later than December 24, 2022; (3) the Army to make Mr. Clark and General Daly or an appropriate substitute available for deposition.

**III.     Document Productions From Civil Litigations Regarding Unclean Hands Defense**

In connection with its unclean hands defense, Ambac seeks document productions made by Plaintiffs, or their associated Developers, in two civil cases involving conditions and mismanagement at Plaintiff projects Monterey Bay and Fort Meade.[1] At the February 14, 2022, discovery conference, the Court directed the parties to "meet and confer about the DOJ and Congress and regulatory productions first... before we go down the road of looking at what might have been produced in the civil litigation." *See* Feb. 14, 2022 Tr. 69:3-7. Since then, Plaintiffs have provided productions from governmental actions about certain Plaintiff projects.

However, Plaintiffs have not made meaningful document productions related to conditions, maintenance issues, and mismanagement of the Monterey Bay and Fort Meade projects, which are associated with the developers Clark, Michaels, and Corvias, despite significant such issues at these projects raised in two civil cases. In each case, the respective plaintiffs alleged systemically poor maintenance and falsification of maintenance records, which would likely call for the production of case reports, summaries, and audits about the maintenance issues at the projects, among other things. Such productions would be relevant to Ambac's unclean hands defense. Further, productions from these cases are likely non-duplicative of the productions in this case because the latter contain very few documents for Monterey Bay and Fort Meade with respect to maintenance and project condition issues. Finally, re-producing documents that have already been produced in other venues imposes minimal burden on Plaintiffs. Ambac thus seeks to compel Plaintiffs to provide the documents they already produced in *D'Antonio* and *Addi*.

Respectfully Submitted,

*/s/ Tai H. Park*

Tai H. Park

---

[1] Specifically, Ambac requested that Plaintiffs re-produce documents produced in *D'Antonio v. Monterey Bay Military Housing*, Case No. 21-cv-2607 (N. D. Cal.) (involving Monterey), and *Addi v. Corvias*, Case No. 19-cv-3253 (D. Md.) (involving Fort Meade).