brownrudnick

LAUREN TABAKSBLAT

direct dial: 212.209.4904

fax: 212.938.2901

LTabaksblat@brownrudnick.com

January 6, 2023

**VIA ECF**

Honorable Sarah L. Cave
United States Magistrate Judge
United States District Court for The
Southern District of New York
500 Pearl Street, Room 1670
New York, New York 10007-1312

**Re:** ***Monterey Bay Military Housing LLC, et al. v. Ambac Assurance Corporation, et al.*****,**
**No. 19-cv-09193 (PGG) (SLC)**

Dear Judge Cave:

Following the December 19, 2022 discovery conference, counsel to Plaintiffs and Jefferies Mortgage Finance, Inc. ("JMFI"), Jefferies LLC, Jefferies & Company, Inc., and Jefferies Group LLC (collectively the "Jefferies Entities") exchanged revised versions of the Rule 30(b)(6) topics addressed to the Jefferies Entities, and met and conferred on January 5, 2023. The parties made progress in narrowing the scope of the objections, however several topics still remain in dispute. Pursuant to the December 19, 2022 Order (ECF No. 580), set forth below is a summary of the topics in dispute.

- Topic 3

**Plaintiffs' Proposed Topic**: Jefferies' communications concerning the Sill and Bliss 2012 and the financing of such projects, including (i) relevant internal communications concerning the Sill and Bliss 2012 Projects; (ii) relevant communications with Ambac regarding the Plaintiff Sill and Bliss 2012 Projects; (iii) representations to and relevant communications with the Sill and Bliss 2012 Projects, the military, the Developers, JLL, and any of their respective advisors, including their commitments to serve as financial advisor, to provide best value, market value, and open book pricing; (iv) relevant communications with rating agencies, bond holders, prospective credit enhancers or sureties, and other third parties regarding any public or "shadow" ratings for the Sill and Bliss 2012 Project Loans; and (v) relevant communications with rating agencies, bond holders, prospective credit enhancers or sureties, and other third parties regarding the Sill and Bliss 2012 Projects.


**Plaintiffs' Position**: Sill Housing LLC and Fort Bliss/White Sands Missile Range Housing LP are plaintiffs in this action. The terms of the financing for Sill and Bliss and representations made to those Projects in connection with those financings are at the core of the dispute in this case. In response to prior objections, Plaintiffs provided specific categories of communications which it seeks to question a Jefferies corporate representative about. The enumerated sub-categories for these two specific projects provide Jefferies with the required specificity to prepare a witness on, and Plaintiffs are not required to identify specific communications they intend to show a witness prior to the deposition. Additionally, crucial to a 30(b)(6) witness deposition it the ability to question a witness about oral communications. Plaintiffs are unable to identify oral communications they are not aware of, specifically internal Jefferies oral communications, and therefore must be able to do so from a Jefferies witness.

**Jefferies Entities' Position**: The Jefferies Entities object to this topic as vague, ambiguous, overbroad, and unduly burdensome. The Jefferies Entities have searched the post-2009 Jefferies Entities documents for communications referencing Sill or Bliss. That search identified over 16,000 emails (not including attachments). The Jefferies Entities cannot designate a witness or witness to testify about these 16,000 communications. To the extent Plaintiffs seek testimony about any particular communication, they should identify it with "reasonable particularity" as required by Rule 30(b)(6).

- Topic 4

**Plaintiffs' Proposed Topic:** Jefferies' knowledge and understanding, if any, of GMAC's communications concerning the Plaintiff MHPI projects and the financing of such projects, including (i) internal communications concerning the Plaintiff MHPI Projects; (ii) communications with Ambac regarding the Plaintiff MHPI Projects; (iii) representations to and communications with Plaintiff MHPI Projects, the military, the Developers, JLL, and any of their respective advisors, including their commitments to serve as financial advisor, to provide best value, market value, and open book pricing; (iv) communications with ratings agencies, bond holders, prospective credit enhancers or sureties, and other third parties regarding any public or "shadow" ratings for the Plaintiff MHPI Project Loans; and (v) communications with rating agencies, bond holders, prospective credit enhancers or sureties, and other third parties regarding the Plaintiff MHPI Projects.

**Plaintiffs' Position:** Plaintiffs' are entitled to inquire as to Jefferies' knowledge of GMAC's communications concerning the Plaintiff MHPI project, and have similarly provided specific categories of communications to allow Jefferies to adequately prepare a witness. This same objection was already rejected when the Court denied Jefferies motion for reconsideration on the basis that Plaintiffs have adequately alleged that Jefferies "knew about and agreed to facilitate the alleged racketeering scheme." (ECF No. 311, Opinion dated 3/30/2021 ("Op."), p. 78) (*citing United States v. Zemlyansky*, 908 F.3d 1, 11 (2d Cir. 2018). Thus, Plaintiffs are entitled to discovery into Jefferies' "knowledge and understanding, if any," of pre- Jefferies deals. If Jefferies lacks any suck knowledge, its corporate designee is required to say so. Further, Plaintiffs are entitled to explore these topics so that they are not ambushed at trial in the event that the court determines that Jefferies is liable for successor liability. Plaintiffs are entitled to probe any

defenses that Jefferies may offer in the event that the court finds that Jefferies may be held liable for damages sustained as a result of the misconduct of its predecessors. In the event that Jefferies' corporate designees testify under oath that they lack knowledge or explanation of any of GMAC's or Capmark's deals, Jefferies should be precluded from offering a different explanation at trial. Additionally, crucial to a 30(b)(6) witness deposition it the ability to question a witness about oral communications. Plaintiffs are unable to identify oral communications they are not aware of, specifically internal GMAC oral communications, and therefore must be able to do so from a Jefferies witness.

**Jefferies Entities' Position**: The Jefferies Entities have already agreed to put forward a witness to testify regarding the Jefferies Entities' knowledge of GMAC's MHPI business practices prior to JMFI's acquisition of certain servicing rights from the Capmark bankruptcy estate. However, the Jefferies Entities have identified more than 65,000 GMAC and/or Capmark emails (not including attachments) that have been produced in this action that could relate to the Plaintiff MHPI projects. It would be unduly burdensome for the Jefferies Entities to attempt to educate a witness about all of them. To the extent Plaintiffs seek testimony about any particular communication, they should identify it with "reasonable particularity" as required by Rule 30(b)(6).

- <u>Topic 9</u>

| <u>Plaintiffs' Proposal</u> | <u>The Jefferies Entities' Proposed Revisions</u> |
|---|---|
| The debt solicitation process for the Sill (2010) loan, including (i) any initial request for proposal (RFP) from Sill regarding the potential financing and Jefferies' desire to compete to provide financing; (ii) the drafting and finalization process Jefferies undertook to create any proposals to the Sill Plaintiff by Jefferies; (iii) the drafting and finalization process Jefferies undertook to create any letters of intent or commitment letters to the Sill Plaintiff from Jefferies, including drafts evidencing substantive changes to relevant deal terms (excluding grammatical or stylistic revisions); (iv) any negotiations by Jefferies with potential credit enhancers; and (v) any site visits by Jefferies to Ft. Sill prior to the closing of the Sill loan. | The debt solicitation process for the Sill (2010) loan, including (i) any initial request for proposal (RFP) from Sill regarding the potential financing and Jefferies' desire to compete to provide financing; (ii) ~~the drafting and finalization process Jefferies undertook to create~~ any proposals to the Sill Plaintiff by Jefferies; (iii) ~~the drafting and finalization process Jefferies undertook to create~~ any letters of intent or commitment letters to the Sill Plaintiff from Jefferies~~, including drafts evidencing substantive changes to relevant deal terms (excluding grammatical or stylistic revisions)~~; (iv) any negotiations by Jefferies with potential credit enhancers; and (v) any site visits by Jefferies to Ft. Sill prior to the closing of the Sill loan. |

**Plaintiffs' Position**: The process Jefferies undertook to prepare and send financing proposals to the Sill Plaintiff is extremely relevant to the claims at issue. Plaintiffs have alleged that Jefferies misrepresented the applicable market rate on the Sill loan, and made improper profits as a result of these misrepresentations. Plaintiffs are entitled to question a witness on the creation of these proposals and the terms offered within them, how these terms may have changed over time, and the reasoning behind any changes. Plaintiffs have provided the specific categories of draft



documents they seek to question a witness on, of which Jefferies can clearly identify, and such preparation of a witness will not be overly burdensome.

**Jefferies Entities' Position**: The Jefferies Entities are willing to designate a witness to testify regarding any proposals they submitted to the Sill Plaintiff, and any letters of intent or commitment letters. However, it is unclear what Plaintiffs mean when they ask for a witness to testify about the "drafting and finalization process" of those documents. It is also unclear what drafts, if any, Plaintiffs contend "evidence substantive changes to relevant deal terms." If there are particular drafts about which Plaintiffs wish the Jefferies Entities to provide testimony, Plaintiffs should identify said drafts.

- Topic 11

| **Plaintiffs' Proposal** | **The Jefferies Entities' Proposed Revisions** |
|---|---|
| The debt solicitation process for the Bliss (2012) loan, including (i) any initial request for proposal (RFP) from Bliss regarding the potential financing and Jefferies' desire to compete to provide financing; (ii) the drafting and finalization process Jefferies undertook to create any proposals to the Bliss Plaintiff by Jefferies; (iii) the drafting and finalization process Jefferies undertook to create any letters of intent or commitment letters to the Bliss Plaintiff from Jefferies, including drafts evidencing substantive changes to relevant deal terms (excluding grammatical or stylistic revisions); (iv) any negotiations by Jefferies with potential credit enhancers; and (v) any site visits by Jefferies to Ft. Bliss prior to the closing of the Project loan. | The debt solicitation process for the Bliss (2012) loan, including (i) any initial request for proposal (RFP) from Bliss regarding the potential financing and Jefferies' desire to compete to provide financing; (ii) ~~the drafting and finalization process Jefferies undertook to create~~ any proposals to the Bliss Plaintiff by Jefferies; (iii) ~~the drafting and finalization process Jefferies undertook to create~~ any letters of intent or commitment letters to the Bliss Plaintiff from Jefferies~~, including drafts evidencing substantive changes to relevant deal terms (excluding grammatical or stylistic revisions)~~; (iv) any negotiations by Jefferies with potential credit enhancers; and (v) any site visits by Jefferies to Ft. Bliss prior to the closing of the Project loan. |

**Plaintiffs' Position:** The process Jefferies undertook to prepare and send financing proposals to the Bliss Plaintiff is extremely relevant to the claims at issue. Plaintiffs have alleged that Jefferies misrepresented the applicable market rate on the Bliss 2012 loan, and made improper profits as a result of these misrepresentations. Plaintiffs are entitled to question a witness on the creation of these proposals and the terms offered within them, how these terms may have changed over time, and the reasoning behind any changes. Plaintiffs have provided the specific categories of draft documents they seek to question a witness on, of which Jefferies can clearly identify, and such preparation of a witness will not be overly burdensome.

**Jefferies Entities' Position**: The Jefferies Entities are willing to designate a witness to testify regarding any proposals they submitted to the Bliss Plaintiff, and any letters of intent or commitment letters. However, it is unclear what Plaintiffs mean when they ask for a witness to testify about the "drafting and finalization process" of those documents. It is also unclear what


drafts, if any, Plaintiffs contend "evidence substantive changes to relevant deal terms." If there are particular drafts about which Plaintiffs wish the Jefferies Entities to provide testimony, Plaintiffs should identify said drafts.

- Topics 13 and 14

| No. | Plaintiffs' Proposal | The Jefferies Entities' Proposed Revisions |
|---|---|---|
| 13 | The financing of Sill, and specifically (i) initial loan terms and negotiation of such terms, (ii) the terms and conditions of any commitment letter issued by Jefferies to Sill, (iii) sales of any bonds or certificates by Jefferies related to the Sill loan, (iv) negotiation and agreement on fees by Jefferies concerning the Sill loan, (vi) the closing process of the Sill loan, (vii) and post-closing transactions and communications related to the Sill loan. | The financing of Sill, and specifically (i) initial loan terms and negotiation of such terms, (ii) the terms and conditions of any commitment letter issued by Jefferies to Sill, (iii) sales of any bonds or certificates by Jefferies related to the Sill loan, (iv) negotiation and agreement on fees by Jefferies concerning the Sill loan, and (vi) the closing process of the Sill loan~~, (vii) and post-closing transactions and communications related to the Sill loan~~. |
| 14 | The financing of Bliss in 2012, and specifically (i) initial loan terms and negotiation of such terms, , (ii) the terms and conditions of any commitment letter issued by Jefferies to Bliss, (iii) sales of any bonds or certificates by Jefferies related to the Bliss 2012 loan, (iv) negotiation and agreement on fees by Jefferies concerning the Bliss 2012 loan, (v) the closing process for the Bliss loan, (vi) and post-closing transactions and communications related to the Bliss 2012 loan. | The financing of Bliss in 2012, and specifically (i) initial loan terms and negotiation of such terms, , (ii) the terms and conditions of any commitment letter issued by Jefferies to Bliss, (iii) sales of any bonds or certificates by Jefferies related to the Bliss 2012 loan, (iv) negotiation and agreement on fees by Jefferies concerning the Bliss 2012 loan, and (v) the closing process for the Bliss loan~~, (vi) and post-closing transactions and communications related to the Bliss 2012 loan~~. |

**Plaintiffs' Position**: In the Second Amended Complaint ("SAC") Plaintiffs' have alleged that after the closing of project loans, specifically for Fort Sill, Jefferies made misrepresentations regarding the terms of the loan. Plaintiffs' request is narrowly tailored to post-closing communications related to the Sill and Bliss 2012 loans, and are not seeking all conceivable post- closing communications related to every category listed below by Jefferies. Additionally, crucial to a 30(b)(6) witness deposition it the ability to question a witness about oral communications. Plaintiffs are unable to identify oral communications they are not aware of, specifically internal Jefferies oral communications, and therefore must be able to do so from a Jefferies witness.


**Jefferies Entities' Position**: It is not clear what "post closing transactions and communications" Plaintiffs are referring to. The Jefferies Entities are willing to designate a witness to testify about specific communications or events that post-date the closing of the loan, but are not able to prepare a witness to testify about every conceivable "transaction" or "communication" related to the loan that occurred after closing including, but not limited to, disbursement requests, potential requests relating to refinancing, the servicing of the loans and associated certificates, and more.

- Topic 24

| No. | Plaintiffs' Proposal | The Jefferies Entities' Proposed Revisions |
|---|---|---|
| 24 | The credit ratings of the Bliss 2012 and Sill Projects, and specifically (i) of the use of surety bonds and/or debt service reserve accounts, (ii) the cost of public ratings obtained, (iii) the process of obtaining public ratings, (iv) any information exchanged with the ratings agencies, (v) whether any instructions were given by Jefferies to cap the ratings, and (vi) any representations to the Bliss 2012 and Sill Projects with respect to the credit ratings sought and ultimate ratings issued. | The credit ratings of the Bliss 2012 and Sill Projects, and specifically (i) of the use of surety bonds and/or debt service reserve accounts, (ii) the cost of public ratings obtained, (iii) the process of obtaining public ratings, ~~(iv) any information exchanged with the ratings agencies,~~ and (iv) whether any instructions were given by Jefferies to cap the ratings~~, and (vi) any representations to the Bliss 2012 and Sill Projects with respect to the credit ratings sought and ultimate ratings issued~~. |

**Plaintiffs' Position:** In this topic, Plaintiffs' have provided the specific categories of information with respect to the ratings agencies they wish to question a witness on, providing narrowly tailored direction as to what Jefferies should prepare the witness for. These requests are temporally limited, requiring only information provided in the negotiation period prior the ultimate rating of the projects. Additionally, crucial to a 30(b)(6) witness deposition it the ability to question a witness about oral communications. Plaintiffs are unable to identify oral communications they are not aware of, specifically oral communications between Jefferies and third parties, and therefore must be able to do so from a Jefferies witness.

**Jefferies Entities' Position:** To the extent Plaintiffs seek testimony regarding "information" provided to or received from the rating agencies, Plaintiffs should specify the "information" about which they seek testimony. Moreover, as the Bliss and Sill Plaintiffs were the purported recipients of the "representations" about which they seek testimony, they should identify which representations they intend to ask a witness about.


- <u>Topics 12, 17, 19, 27 and 47</u>

The Jefferies Entities objections to topics 12, 17, 19, 27 and 47 are based of the portion of each topic requesting testimony concerning "all" or "relevant" internal discussions or communications about a topic. The Jefferies Entities have proposed to limit these topics as follows.

| **No.** | **Plaintiffs' Proposal** | **The Jefferies Entities' Proposed Revisions** |
|---|---|---|
| 12 | Jefferies' knowledge and understanding, if any, of the debt solicitation process for the Plaintiff MHPI Projects in which GMAC participated, and any effort by GMAC to be selected to provide any services to the Plaintiff MHPI Projects, including (i) the initial request for proposal (RFP) and any assessment by GMAC; (ii) the development and submission of any proposals to Plaintiffs; (iii) the development of and submission of any letters of intent or commitment letters to Plaintiffs; (iv) any negotiations with potential credit enhancers; (v) any site visits prior to the closing of the Project loans; and (vi) any revisions to the commitment terms prior to any Project loan closing, and all internal communications concerning the same. | Jefferies' knowledge and understanding, if any, of the debt solicitation process for the Plaintiff MHPI Projects in which GMAC participated, and any effort by GMAC to be selected to provide any services to the Plaintiff MHPI Projects, including (i) the initial request for proposal (RFP) and any assessment by GMAC; (ii) the development and submission of any proposals to Plaintiffs; (iii) the development of and submission of any letters of intent or commitment letters to Plaintiffs; (iv) any negotiations with potential credit enhancers; (v) any site visits prior to the closing of the Project loans; and (vi) any revisions to the commitment terms prior to any Project loan closing~~, and all internal communications concerning the same~~. |
| 17. | The method of setting the interest rate for the Bliss 2012 and Sill Project loans, the dates on which Jefferies sold certificates associated with those loans, and the amount of credit lock fees charged to Bliss 2012 and Sill, respectively, and any relevant communications within Jefferies regarding the same. | The method of setting the interest rate for the Bliss 2012 and Sill Project loans, the dates on which Jefferies sold certificates associated with those loans, and the amount of credit lock fees charged to Bliss 2012 and Sill, respectively~~, and any relevant communications within Jefferies regarding the same~~. |
| 19 | Any financial products offered or provided to the Bliss 2012 and Sill Projects by Jefferies and any relevant communications regarding same. | Any financial products offered or provided to the Bliss 2012 and Sill Projects by Jefferies ~~and any relevant communications regarding same~~. |

| | | |
|---|---|---|
| 27 | The securitization of the loans through the creation of grantor trusts and assignment of the Bliss 2012 and Sill Projects' loans to such trusts and subsequent sale of the bonds or certificates, including the pricing, sale process, and timing of the sale of the bonds or certificates and all communications with prospective bond purchasers or investors relating the coupon or yield rate, purchase price, size of purchase, and commitment and execution date regarding the sale of the bonds or certificates. | The securitization of the loans through the creation of grantor trusts and assignment of the Bliss 2012 and Sill Projects' loans to such trusts and subsequent sale of the bonds or certificates, including the pricing, sale process, and timing of the sale of the bonds or certificates ~~and all communications with prospective bond purchasers or investors relating the coupon or yield rate, purchase price, size of purchase, and commitment and execution date regarding the sale of the bonds or certificates~~. |
| 47 | Jefferies knowledge, if any, of Ambac's consent rights (including right of first refusal on subsequent MHPI Project loans) as to (i) any Plaintiff MHPI loans within the portfolio acquired by Jefferies from Capmark/GMAC; and (ii) any new MHPI loans originated by Jefferies to any Plaintiff, and any relevant communications regarding same. | Jefferies knowledge, if any, of Ambac's consent rights (including right of first refusal on subsequent MHPI Project loans) as to (i) any Plaintiff MHPI loans within the portfolio acquired by Jefferies from Capmark/GMAC; and (ii) any new MHPI loans originated by Jefferies to any Plaintiff~~, and any relevant communications regarding same~~. |

**Plaintiffs' Position on Topics 12, 17, 19, 27 and 47:** Jefferies' objection to these topics is limited to preparing a witness concerning communications, which Jefferies claim is overbroad. Each of these topics provides specific direction as to the communications Plaintiffs seek to question a witness about, and provide temporal directions as to relevant period of such communications. Plaintiffs have meet their burden of describing their topics with specificity and discernable boundaries. *See Winfield v. City of New York*, No. 15CV05236LTSKHP, 2018 WL 840085, at *5 (S.D.N.Y. Feb. 12, 2018) (noting topics should be substantively and temporally relevant to the claims and defenses); *see also Seliger v. Breitbart News Network, LLC*, No. 20. CIV. 2860 (ER), 2021 WL 707063, at *4 (S.D.N.Y. Feb. 22, 2021) (finding topic seeking testimony on "the communications, correspondence, and documents" relating to a purchase and licensing was "quite clearly focused").

Topics 12 ask for testimony on Jefferies knowledge of GMAC's internal communications regarding the debt solicitation periods on its MHPI projects. These periods are clearly defined, cutoff by each project's closing date, and provide specificity as to the categories of communications and discussions Plaintiffs seek to question on. With respect to topics 17 and 19, Plaintiffs seek testimony on the relevant discussions and communications relating to the negotiation and pre-closing periods of the Sill and Bliss 2012 projects. Such negotiation periods prior to the closing date certainly have "discernable boundaries" and these topics provide the specific categories of information Plaintiffs seek to question on. Topic 27 relates to the crux of



Plaintiffs' case. In the SAC, Plaintiffs have alleged that Dan Ray and Jefferies pre-sold the underlying bonds prior to closing, misrepresenting the nature of this sale process to the Plaintiffs. What Jefferies discussed with prospective bond purchasers, regarding the terms and timing of these sales is extremely relevant to Plaintiffs' claims. Further, Plaintiff has provided specific categories of bondholder communications with which it intends to question a witness on. All such communications are temporally limited, and would have occurred during the negotiation period prior to the closing date. Finally, Topic 47 seeks information relating to the discrete topic of whether Ambac had consent rights on the loans Jefferies acquired. The communications sought in Topic 47 relate to Jefferies due diligence period of Capmark's military housing assets, which amounts to several months in the Fall/Winter of 2009, and whether during that time Ambac's consent rights were discussed. All communications sought have clearly defined temporal boundaries and the topics provide the relevant specificity so that preparation of a witness on each will not be overly burdensome. Additionally, crucial to a 30(b)(6) witness deposition it the ability to question a witness about oral communications. Plaintiffs are unable to identify oral communications they are not aware of, specifically internal Jefferies oral communications and those with third parties, and therefore must be able to do so from a Jefferies witness.

**Jefferies Entities' Position**: The Jefferies Entities are willing to put forward a witness about each of the above-described topics generally. However, there are thousands of potentially relevant communications regarding each such topic, and it is not feasible for the Jefferies Entities to educate a witness regarding "all" of those communications. Nor do the Jefferies Entities know which communications Plaintiffs deem "relevant."

For example, in response to Topic 12, the Jefferies Entities have searched post-2009 Jefferies Entities documents for communications referring to any of the Plaintiff MHPI Projects. That search identified 46,000 emails, not including attachments. Similarly, in response to Topics 17 and 19, the Jefferies Entities searched for post-2009 documents concerning the Sill or Bliss projects. Those searches identified over 16,000 emails, not including attachments. With respect to Topic 27, the Jefferies Entities searched for communications with actual or prospective bond purchasers (or emails reflecting such communications) and identified approximately 1,000 emails. Finally, in response to Topic 47, the Jefferies Entities searched for documents referencing "Ambac" and "Consent". That search identified approximately 7,000 emails, not including attachments.

It is overly burdensome to ask the Jefferies Entities to prepare a witness to testify about nearly 70,000 documents. To the extent Plaintiffs seek testimony about any particular communication, they should identify it with "reasonable particularity" as required by Rule 30(b)(6).

- <u>Topic 44</u>

**Plaintiffs' Proposed Topic:** Jefferies' knowledge and understanding of any allegations in the Amended Complaint that Jefferies denies, including the facts upon which Jefferies bases its denial. *See* Jefferies' Answer to Plaintiffs' Second Am. Compl. ¶¶5, 7, 8, 9, 10, 11, 13, 14, 25, 26, 28, 29, 30, 32, 33, 34, 35, 56, 57, 64–72, 76–81, 83, 91, 92, 96, 154, 155–160, 164, 178–180, 185, 188, 190, 192, 194, 195, 204, 209, 212–214, 216, 222, 223, 225, 226, 233–238, 241–243,


246–248, 252, 254–265, 266, 267, 269, 271–273, 276–279, 282–285, 288–293, 296, 297–300, 302, 305–307.

**Plaintiffs' Position:** In its answer, Jefferies denied a finite and identifiable number of allegations. Plaintiffs are entitled to determine the factual bases for Jefferies denials. Notably, Defendants similarly requested that Plaintiffs be prepared to testify regarding the converse, *i.e.*, all the "allegations, counts, and claims set forth in the SAC," to which Plaintiffs did not object. Jefferies apparently had a good faith belief for why each of these specific allegations were not accurate, and Plaintiffs are entitled to inquire about Jefferies belief for these specific allegations.

**Jefferies Entities' Position**: The Jefferies Entities object to this topic on the ground that it is overbroad. The Second Amended Complaint (ECF No. 211) is 87 pages long and has over 300 allegations, many of which were denied by the Jefferies Entities in their First Amended Answer. It would be unduly burdensome to educate a witness about the factual bases for the denial of approximately 100 paragraphs, especially when the substance of many of these paragraphs will be covered by the other topics.

Respectfully Submitted,

BROWN RUDNICK LLP

*/s/ Lauren Tabaksblat*
Michael J. Bowe
Lauren Tabaksblat
Marcus Strong
Brown Rudnick LLP
7 Times Square
New York, New York 10036
Telephone: (212) 209- 4800
Facsimile: (212) 209- 4801

*Counsel for Plaintiffs*

HERBERT SMITH FREEHILLS NEW YORK LLP

/s/ *Michael P. Jones*
Scott S. Balber
John J. O'Donnell
Michael P. Jones
Barron M. Flood
450 Lexington Avenue
New York, New York 10017
Tel: (917) 542-7600
Fax: (917) 542-7601

*Counsel to the Jefferies Entities*