UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MONTEREY BAY MILITARY HOUSING, LLC, MONTEREY BAY LAND, LLC, MEADE COMMUNITIES LLC, FORT BLISS/WHITE SANDS MISSILE RANGE HOUSING LP, RILEY COMMUNITIES LLC, FORT LEAVENWORTH FRONTIER HERITAGE COMMUNITIES, I, LLC, FORT LEAVENWORTH FRONTIER HERITAGE COMMUNITIES, II, LLC, CARLISLE/PICATINNY FAMILY HOUSING LP, BRAGG COMMUNITIES LLC, FORT DETRICK/WALTER REED ARMY MEDICAL CENTER LLC, PICERNE-FORT POLK FUNDING, LLC, RUCKER COMMUNITIES, LLC, STEWART HUNTER HOUSING LLC, SILL HOUSING, LLC, AETC HOUSING LP, AMC WEST HOUSING LP, LACKLAND FAMILY HOUSING, LLC, and VANDENBERG HOUSING LP, | CIVIL ACTION NO. 19 Civ. 9193 (PGG) (SLC) <br><br> **OPINION AND ORDER** |
| Plaintiffs, | |
| -v- | |
| AMBAC ASSURANCE CORPORATION, JEFFERIES MORTGAGE FINANCE, INC., JEFFERIES & COMPANY INC., JEFFERIES L.L.C., JEFFERIES GROUP LLC, DANNY RAY, and CHETAN MARFATIA, | |
| Defendants. | |

**SARAH L. CAVE,** United States Magistrate Judge.

**I.INTRODUCTION**

In the latest chapter in the lengthy history of discovery in this action, Defendant Ambac

Assurance Corporation ("Ambac") sought to compel the United States Department of the Army

("Army"), and Defendant Jefferies[1] sought to compel the United States Department of the Air

---

[1] Jefferies Mortgage Finance, Inc.; Jefferies & Co. Inc.; Jefferies L.L.C.; and Jefferies Group LLC.  Danny Ray ("Mr. Ray") and Chetan Marfatia ("Mr. Marfatia") are also Defendants in this action.

Force ("Air Force"), to produce witnesses for Federal Rule of Civil Procedure 30(b)(6) depositions. (ECF Nos. 709; 712–13 (the "Motions to Compel")).   Following an in-person conference on August 1, 2023, the Court granted in part and denied in part the Motions to Compel.  (ECF No. 733 (the "Aug. 1 Order")).   The Army and the Air Force have objected to the Aug. 1 Order, which they now ask the Court to stay pending a ruling by the Honorable Paul G. Gardephe on their objections. (ECF No. 737 (the "Stay Motion")).  Ambac and Jefferies oppose the Stay Motion.  (ECF No. 738). For the reasons set forth below, the Stay Motion is DENIED.

## II. BACKGROUND

### A.  Factual Background

#### 1.  Prior Monterey decisions

The factual background of this action is set out in detail in prior decisions issued by Judge Gardephe and the undersigned.  See Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp., No. 19 Civ. 9193 (PGG) (SLC), 2023 WL 3779338 (S.D.N.Y. May 25, 2023) ("Monterey Bay IV"); Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp., No. 19 Civ. 9193 (PGG) (SLC), 2023 WL 315072 (S.D.N.Y. Jan. 19, 2023) ("Monterey Bay III"); Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp., No. 19 Civ. 9193 (PGG) (SLC), 2021 WL 4173929 (S.D.N.Y. Sept. 14, 2021) ("Monterey Bay II"); Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp., 531 F. Supp. 3d 673 (S.D.N.Y. 2021) ("Monterey Bay I").[2]  The Court incorporates those factual summaries, and all defined terms to the extent not defined differently herein.

---

[2] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

## 2. The role of the Army and Air Force

As is relevant to the Stay Motion, the Military Housing Privatization Initiative of 1996 ("MHPI") authorized the United States Department of Defense, including the Army and the Air Force, "to enter into agreements with private developers to modernize housing for military families on bases around the country." (ECF No. 210-3 ¶ 1). Plaintiffs[3] are the MHPI project entities dedicated to individual military bases (the "Projects"). (Id.) The Army and the Air Force partnered with private developers, which managed the Projects. (Id. ¶¶ 2–3). For each Army MHPI Project, the Army contributed housing and equity in exchange for a "significant equity participation," and possessed "consent rights to major decisions regarding the Projects, including the terms of the initial financing at issue and whether to pursue litigation such as" this action. (Id. ¶ 2). Similarly, for each Air Force MHPI Project, the Air Force contributed housing and provided a loan to the project in exchange for the rights to cash flows from the project, to consent to significant aspects of the project, and to consult on whether to pursue litigation including this action. (Id ¶ 3). The Army and the Air Force are not, however, parties to this action. (See generally id.).

### B. Procedural Background

The Court deemed fact discovery in this action closed as of April 28, 2023, with a few discrete issues, including discovery from the Army and Air Force, remaining open. Monterey

---

[3] Plaintiffs are Monterey Bay Military Housing, LLC, Monterey Bay Land, LLC, Meade Communities LLC, Fort Bliss/White Sands Missile Range Housing LP, Riley Communities LLC, Fort Leavenworth Frontier Heritage Communities, I, LLC, Fort Leavenworth Frontier Heritage Communities, II, LLC, Carlisle/Picatinny Family Housing LP, Bragg Communities LLC, Fort Detrick/Walter Reed Army Medical Center LLC, Picerne-Fort Polk Funding, LLC, Rucker Communities, LLC, Stewart Hunter Housing LLC, Sill Housing, LLC, AETC Housing LP, AMC West Housing LP, Lackland Family Housing, LLC, and Vandenberg Housing LP.

Bay IV, 2023 WL 3779338, at *4.  (ECF Nos. 635; 646; 674; 696).  Expert discovery is ongoing and will be completed by October 27, 2023.  (ECF No. 696).

### 1.  **The Army Touhy Request**[4]

On December 22, 2022, Ambac served on the Army a Rule 30(b)(6) deposition subpoena and Touhy request.  (ECF No. 712-1 (the "Army Touhy Request")).  Over the next several months, Ambac and the Army met and conferred seven times and Ambac narrowed the Army Touhy Request three times.  (ECF Nos. 712 at 1; 712-2; 712-3; 712-4).  The Army continued to object to the Army Touhy Request—even as modified—as irrelevant, overbroad, and/or unduly burdensome.  (ECF Nos. 712-6; 712-7 at 16; 712-11; 712-12).

In the meantime, Defendants deposed three individual Army witnesses:  Mark Connor, Rhonda Hayes, and Ian Clark.  (ECF Nos. 684-1; 712 at 2; 712-7 at 20).  See Monterey Bay IV, 2023 WL 3779338, at *3.[5]  Ambac invited the Army to adopt certain testimony of those witnesses as the Army's Rule 30(b)(6) testimony.  (ECF Nos. 709-3 at 6; 712 at 2; 734 at 48).  The Army, however, declined to do so, and took the position that it would only "consider" responding to written questions and would not offer a Rule 30(b)(6) witness to testify at an in-person deposition.  (ECF No. 712-13 at 2, 4).  On July 11, 2023, Ambac filed the Motion to Compel the Army to produce a Rule 30(b)(6) witness.  (ECF No. 712).

### 2.  **The Air Force Touhy Request**

On March 7, 2023, Jefferies served a Touhy request on the Air Force seeking testimony concerning, inter alia, Defendants' "alleged wrongful acts," GMAC's and Mr. Ray's role with

---

[4] United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951).  See § III.A.2, infra.
[5] In Monterey Bay IV, the Court denied Jefferies' request to reopen Mr. Connor's deposition.  2023 WL 3779338, at *5-6.

respect to Air Force MHPI Projects, and the preservation of documents.  (ECF No. 675-2 (the "Air Force Touhy Request"); see ECF No. 709 at 1 n.3).  At the Air Force's request, Jefferies narrowed the topics in the Air Force Touhy Request, but the Air Force still denied it as unduly burdensome, and the parties continued to meet and confer four more times regarding the topics. (ECF Nos. 709 at 1 n.1; 709-2; 709-4).  Jefferies subsequently agreed to narrow the topics as to which it sought the Air Force's Rule 30(b)(6) testimony to four:  (i) the factors the Air Force considered when selecting lenders and approving financing for the Air Force MHPI Projects, (ii) whether the Air Force contends that Defendants made misrepresentations to it, (iii) the Air Force's consent to Plaintiffs' filing this action, and (iv) the Air Force's preservation and production of relevant documents.  (ECF No. 709 at 1–2; see ECF No. 734 at 33–34, 36).  Although Jefferies invited the Air Force to designate individual Air Force witnesses' testimony for Rule 30(b)(6) purposes, the Air Force declined to review the designations absent Jefferies's prior agreement to waive the right to a Rule 30(b)(6) deposition.  (ECF Nos. 709-3 at 6, 8; 712-13 at 2).  Ultimately, like the Army, the Air Force only offered to respond to written questions and would not offer a Rule 30(b)(6) witness to testify at an in-person deposition.   (ECF No. 709-3 at 4, 8). On July 11, 2023, Jefferies filed the Motion to Compel the Air Force to produce a Rule 30(b)(6) witness.  (ECF No. 709).

### 3.  The Aug. 1 Order

After hearing nearly an hour of in-person argument from the parties on the Motions to Compel, the Court granted them in part and denied them in part in an oral ruling memorialized in the Aug. 1 Order.  (ECF Nos. 733; 734).  The Court first explained that, while the ruling would

be the same whether the APA's[6] arbitrary and capricious standard or the Rule 45 substantial burden standard applied, the Court was applying the APA arbitrary and capricious standard because, although "narrow," that standard was "more deferential" to the position of the Army and the Air Force.  (ECF No. 734 at 64).

The Court then turned to the question whether the decision of the Army and the Air Force "to deny the [D]efendants' request to produce a live witness for a Rule 30(b)(6) deposition was based on a consideration of the relevant factors and whether there has been a clear error of judgment."  (ECF No. 734 at 64 (quoting City of New York v. Shalala, 34 F.3d 1161, 1167 (2d Cir. 1994)).  The Court explained that, "despite the deference that [the APA] standard gives to the government . . . the government's decision not to produce a live [Rule] 30(b)(6) witness from the Army and the Air Force is not supported by the record here and, therefore, is arbitrary and capricious."  (Id.)  The Court found that the Defendants' "very, very strong interest . . . in obtaining . . . the very important evidence from the Army and Air Force in this case" outweighed the burden that the Army and Air Force would incur in producing Rule 30(b)(6) witnesses.  (Id. at 64–65).  Unlike typical non-parties "who are multiple steps removed and don't have a financial interest in the outcome of the case," the Court observed that the Army and Air Force "feature prominently in the complaint" and "have a financial interest with respect to the projects that are the plaintiffs in this case."  (Id. at 65).  Because the Defendants' interest in obtaining the Rule 30(b)(6) testimony outweighed the interest of the Army and Air Force in avoiding the burden of preparing the witnesses, the Court held that their "denial of the request to produce the witnesses was arbitrary and capricious."  (Id.)

---

[6] Administrative Procedures Act, 5 U.S.C. § 706(2).

The Court cautioned that its ruling was "very narrow . . . in order to take into account the burden on the Air Force and the Army in producing a [Rule] 30(b)(6) witness." (Id. at 65–66). To minimize that burden, the Court:  (1) limited the length of the depositions; (2) further narrowed the topics for the depositions; and (3) required Defendants to provide potential exhibits in advance of the depositions.  (Id. at 66–71).  As to the Air Force, the Court limited the length of the Rule 30(b)(6) deposition to "3.5 hours of on-the-record time regarding the four Air Force MHPI Projects between 2005 and 2009," and to the following four topics: (i) "[m]isrepresentations the Air Force contends Defendants made to the Air Force in connection with the four Air Force MHPI projects"; (ii) "[t]he process and considerations the Air Force employed in selecting lenders for the four Air Force MHPI projects"; (iii) "[w]hether the Air Force perceived Mr. Ray, GMAC, Capmark, or other entity with whom Mr. Ray was employed, as a 'financial advisor'"; and (iv) "[w]hether the Air Force approved the filing of this action, which calls for a 'yes' or 'no' answer."  (ECF No. 733 ¶ 2(a); see ECF No. 734 at 66).  As to the Army, the Court limited the length of the Rule 30(b)(6) deposition to "4.5 hours of on-the-record time regarding the twelve Army MHPI projects between 2002 and 2012," and to the following three topics: (i) "[t]he process and criteria the Army employed in selecting for the twelve Army MHPI projects: (1) lenders, (2) developers, and (3) credit enhancement"; (ii) "[w]hether the Army perceived Mr. Ray, GMAC, Capmark, or other entity with whom Mr. Ray was employed, as a 'financial advisor'"; and (iii) "[w]hether the Army approved the filing of this action, which calls for a 'yes' or 'no' answer."  (ECF No. 733 ¶ 2(b); see ECF No. 734 at 66–67, 73).  The Court specifically rejected Defendants' request to expand the topics to include efforts the Army and Air Force had

taken to preserve and produce documents or the process by which they approved of the filing of this action.  (ECF No. 734 at 45–46, 74, 77).

At the suggestion of counsel for the Army and the Air Force, the Court also required counsel for Defendants, "[n]o later than two weeks before each respective Rule 30(b)(6) deposition," to "provide to counsel for the Air Force and the Army a set of exhibits about which the witness may be questioned, without prejudice to (i) Defendants' ability to introduce additional exhibits at the deposition; and (ii) any objections the Air Force or the Army may have to the use of any exhibit at the deposition."  (ECF No. 733 at 3).  Although doing so was not ordinarily required, the Court explained that it was imposing the obligation on Defendants "to minimize the burden on [the Army and the Air Force] out of deference to the government's position."  (ECF No. 734 at 69–70; see id. at 70 ("THE COURT:  So consider it a bit of charity on your part . . . that you're accommodating my interest in minimizing the burden on the government")).

Finally, in consultation with the parties' schedules, the Court set deadlines for the Air Force and Army to disclose to Defendants the identities of their respective Rule 30(b)(6) witnesses and set an October 2, 2023 deadline for completion of the depositions.  (ECF Nos. 733; 734 at 68).  The Court then memorialized its rulings in the Aug. 1 Order.  (ECF No. 733).

On August 15, 2023, the Army and the Air Force filed objections to the Aug. 1 Order. (ECF No. 736 (the "Objections")).  They acknowledge that the Court applied the correct legal framework in evaluating the Motions to Compel, but contend that the Court erred by "re-weigh[ing] the applicable factors—principally burden and relevance—to reach a different conclusion from the agencies . . . rather than deferring to the agencies' rational assessment."

(Id. at 20).  The Army and the Air Force also contend that the Court erred by compelling them to produce witnesses for Rule 30(b)(6) depositions rather than vacating and remanding the matter back to the agencies.  (Id. at 22 n.5, 29–30).

### III. DISCUSSION

#### A.  Legal Standards

##### 1.  Motion to stay

The decision to stay an action pending is an "exercise of judicial discretion . . . dependent upon the circumstances of the particular case."  Nken v. Holder, 556 U.S. 418, 433 (2009); see Rivera-Zayas v. Our Lady of Consolation Geriatric Care Ctr., No. 20 Civ. 5153 (NGG) (JMW), 2021 WL 4776610, at *1 (E.D.N.Y. Oct. 13, 2021) (quoting Nken, 556 U.S. at 433).  Four factors guide a court's exercise of this discretion:

> (1) whether the stay applicant has made a strong showing that [they are] likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Nken, 556 U.S. at 434.  This standard applies equally to a request for a stay pending resolution of objections to a magistrate judge's discovery ruling.  See In re Pidwell, No. 21 Misc. 166 (ALC) (KHP), 2022 WL 443632, at *1 (S.D.N.Y. Feb. 14, 2022).  The party seeking a stay bears a "heavy burden to establish a favorable balance of these factors."  N.R.D.C. v. U.S. F.D.A., 884 F. Supp. 2d 108, 122 (S.D.N.Y. 2012).

##### 2.  Touhy requests

Pursuant to the federal "Housekeeping Statute," 5 U.S.C. § 301, federal agencies may adopt procedures—referred to as "Touhy regulations" after the Supreme Court's decision—"for responding to subpoenas and other requests for testimony or documents."  United States ex rel.

Pogue v. Diabetes Treatment Ctrs. of Am., Inc., 474 F. Supp. 2d 75, 79 (D.D.C. 2007); accord Koopmann v. U.S. Dep't of Transp., 335 F. Supp. 3d 556, 558 (S.D.N.Y. 2018).  The Touhy regulations applicable to the Army and the Air Force, 32 C.F.R. §§ 97.1, et seq. (the "Regulations"), apply "[i]n response to a litigation request or demand," 32 C.F.R. § 97.7(a), which "must describe, in writing and with specificity, the nature of the official information or witness testimony sought, its relevance to the litigation, and other pertinent details addressing the factors in § 97.8"  32 C.F.R.  § 97.9(a).  Those factors include whether the request: (a) "is overbroad, unduly burdensome, or otherwise inappropriate"; (b) is "improper" by seeking "information [that] is irrelevant, cumulative, or disproportional to the needs of the case"; (c) seeks privileged or otherwise protected information; (d) calls for disclosure that "would violate a statute, Executive order, regulation, or policy"; (e) would reveal classified information; or  (f) would "[i]nterfere with an ongoing enforcement proceeding," "[c]ompromise a constitutional right," "[e]xpose an intelligence source or confidential informant," "[d]ivulge a trade secret or similar confidential information," or "[b]e otherwise inappropriate." 32 C.F.R. § 97.8.  Where the military's chief legal advisor "approves the release of official information or the presentation of witness testimony," disclosure is limited "to those matters specified in the litigation request or demand, subject to any conditions imposed by the chief legal advisor."  Id. § 97.9(f).  The Regulations also instruct military personnel to "decline to comply" with a court-ordered "disclosure that the chief legal advisor previously disapproved or has yet to approve."  Id. § 97.9(g).

Where a party believes that an agency has improperly denied a Touhy request, the party must proceed under the APA, pursuant to which a court shall "hold unlawful and set aside agency

action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." <u>Adler v. U.S. D.O.J.</u>, No. 18 Civ. 2188 (PAC), 2018 WL 4571677, at *3 (S.D.N.Y. Sept. 24, 2018) (citing 5 U.S.C. § 706(2)(A)).[7]   A court may set aside an agency action under this standard "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." <u>Shalala</u>, 34 F.3d 1161 at 1167.  This standard is "highly deferential and presumes the agency's action to be valid," <u>Adler</u>, 2018 WL 4571677, at *3, and the party challenging the denial must make a "strong showing that the testimony is necessary." <u>Bobreski v. U.S. E.P.A.</u>, 284 F. Supp. 2d 67, 74 (D.D.C. 2003).

**B.  <u>Application</u>**

Balancing the four stay factors in the context of the <u>Touhy</u> regulations and the APA, the Court finds that a stay is not warranted.

**1.  <u>Likelihood of success</u>**

The Court finds that the Army and Air Force have failed to establish "a probability of success on the merits." <u>Pidwell</u>, 2022 WL 443632, at *1.  As an initial matter, the Aug. 1 Order involved a non-dispositive matter and will stand unless the Army and Air Force demonstrate to

---

[7] Although "[t]he Second Circuit has not yet articulated the correct standard of review for a denial of a <u>Touhy</u> request," <u>S.E.C. v. Chakrapani</u>, No. 09 Civ. 325 (RJS), 2010 WL 2605819, at *9 (S.D.N.Y. June 29, 2010) (citing <u>U.S. E.P.A. v. Gen. Elec. Co.</u>, 212 F.3d 689, 690 (2d Cir. 2000)), the weight of authority in this District has applied the "arbitrary and capricious" standard more often than that found in Federal Rule of Civil Procedure 45.  <u>See</u> <u>Adler</u>, 2018 WL 4571677, at *4; <u>Koopmann</u>, 355 F. Supp. 3d at 559–60; <u>Chakrapani</u>, 2010 WL 2605819, at *29.

Judge Gardephe that the ruling was "clearly erroneous or contrary to law."   28 U.S.C. § 636(b)(1)(A).  "This standard of review is highly deferential, and magistrate judges are afforded broad discretion in resolving nondispositive disputes[;] reversal is appropriate only if their discretion is abused."  Pugh-Ozua v. Springhill Suites, No. 18 Civ. 1755 (RA), 2020 WL 6562376, at *3 (S.D.N.Y. Nov. 9, 2020) (cleaned up).

In the Stay Motion—and in the Objections—the Army and the Air Force contend that the Court misapplied the APA arbitrary and capricious standard of review and imposed a remedy unavailable under the APA.  (ECF No. 737 at 1; see ECF No. 736 at 20–31).  The Court disagrees on both counts.  First, the decision of the Army and the Air Force to respond to the respective Touhy Requests only by responses to written questions and refusing to produce witnesses for live depositions was arbitrary and capricious because—as one of the cases they cite recognizes— "[t]he Federal Rules of Civil Procedure do not permit a party served with a Rule 30(b)(6) deposition notice or subpoena request 'to elect to supply the answers in a written response to an interrogatory.'"  Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co., 251 F.R.D. 534, 539 (D. Nev. 2008) (quoting Marker v. Union Fidelity Life Ins., 125 F.R.D. 121, 126 (M.D.N.C. 1989)).  (See ECF No. 737 at 2).  The Court's finding that the decision by the Army and Air Force to provide only written responses, rather than deposition testimony, was arbitrary and capricious was thus fully consistent with other district courts addressing similar agency decisions.  See, e.g., In re 3M Combat Arms Earplug Prods. Liab. Litig., No. 20. Misc. 65 (MCR) (GRJ), 2020 WL 6438614, at *4 (N.D. Fla. Nov. 2, 2020) ("3M I") (holding that agency's "decision to offer a declaration in lieu of a deposition [was] arbitrary and capricious" because "a declaration is not an adequate substitute for live testimony, such as a deposition"); Cavanaugh v. Wainstein, No. 05 Civ. 123 (GK),

2007 WL 1601723, at *10 (D.D.C. June 4, 2007) (holding that agency's decision to provide declaration in place of deposition was arbitrary and capricious).  As the Court observed at oral argument, counsel for the Army and the Air Force failed to offer any precedent to justify their position that answers to written questions were an adequate substitute for a deposition. (ECF No. 734 at 54).  By offering to provide only written responses, the Army and the Air Force necessarily acknowledged—nor could they credibly dispute in light of Plaintiffs' allegations—that the information Defendants sought was relevant and "very, very important" to the claims and defenses in this action.  (ECF No. 734 at 65).  And yet, in opposing the Motions to Compel, the Army and the Air Force offered only "generalized assertions about the burden of having [witnesses] prepare and sit for a deposition . . . [and did] not evince any effort [] to examine the actual evidence before [them], which is error."  In re 3M Combat Arms Earplug Prods. Liab. Litig., No. 20 Misc. 65 (MCR) (GRJ), 2020 WL 7232079, at *3 (N.D. Fla. Dec. 8, 2020) ("3M II"); see also Franchitti v. Cognizant Tech. Sols. Corp., No. 17 Civ. 6317 (PGS) (RLS), 2023 WL 2759075, at *7 (D.N.J. Apr. 3, 2023) (holding that agency's "blanket assertion" of privilege was "insufficient to articulate a satisfactory explanation" for agency's rejection of Touhy request and was, therefore, arbitrary and capricious).  Accordingly, the Army and the Air Force have not made a strong showing that the Court misapplied the arbitrary and capricious standard of review.

Second, the Army and the Air Force have not shown that the remedy the Court imposed— abbreviated Rule 30(b)(6) depositions limited to narrow topics and with the exhibits provided in advance—was not authorized and that, instead, remand was required.  This is certainly not the first occasion on which a federal district court, after finding an agency's decision arbitrary and capricious, compelled the agency to provide discovery.  See, e.g., 3M I, 2020 WL 6438614,

at *4–5 (denying motion to quash subpoena on finding that agency's refusal to provide deposition on certain topics arbitrary and capricious and requiring agency to produce witness for deposition); Chakrapani, 2010 WL 2605819, at *10 (finding that agency's refusal to produce certain documents was arbitrary and capricious and granting motion to compel production); Alexander v. F.B.I., 186 F.R.D. 78, 95 (D.D.C. 1998) (applying Touhy analysis and compelling agency to produce witness for deposition). The Army and the Air Force do not dispute the Court's invocation of Rule 45 (ECF No. 734 at 67), which provided an alternative basis to compel the depositions in the absence of a showing of an undue burden. See, e.g., In re Terrorist Attacks on Sept. 11, 2001, 523 F. Supp. 3d 478, 508, 513–15 (S.D.N.Y. 2021) (ordering federal agency, pursuant to Rule 45, to search for and produce certain categories of documents), adopted by, No. 03 MD 1570 (GBD) (SN), 2021 U.S. Dist. LEXIS 88193 (S.D.N.Y. May 6, 2021).

Ultimately, in the Stay Motion and the Objections, the Army and the Air Force simply repeat arguments previously made and rejected in opposition to the Motions to Compel and at oral argument, which does not constitute the requisite strong showing of likelihood of success on the merits. See N.R.D.C., 884 F. Supp. 2d 108 at 123; Int'l Equity Inv., Inc. v. Opportunity Equity Partners Ltd., No. 05 Civ. 2745 (LAK), 2006 WL 1116437, at *3–4 (S.D.N.Y. Apr. 26, 2006) (holding that stay applicant failed to show substantial likelihood of success on the merits by repeating arguments previously rejected); Shays v. F.E.C., 340 F. Supp. 2d 39, 45–47 (D.D.C. 2004) (holding that stay applicant who "offer[ed] little more than a regurgitation of rejected arguments" did not establish likelihood of success); Schwartz v. Dolan, 159 F.R.D. 380, 384 (N.D.N.Y. 1995) (holding that the "[m]ere repetition of arguments previously considered and rejected cannot be

characterized as a strong showing [of likelihood of success on the merits]").  Thus, the first factor weighs against granting a stay.

### 2.  **Irreparable harm to the Army and Air Force**

To establish irreparable injury, the Army and the Air Force have the burden to show an "injury that is not remote or speculative but actual and imminent."  In re Elec Books Antitrust Litig., No. 12 Civ. 3394 (DLC), 2014 WL 1641699, at *4 (S.D.N.Y. Apr. 24, 2014).  They must also show an injury that "cannot be remedied absent a stay" and "for which a monetary award cannot be adequate compensation."  Id.  In evaluating irreparable injury, a court should "tak[e] into account the possibility that the ruling sought to be stayed is erroneous."  N.R.D.C., 884 F. Supp. 2d at 123.

Once again, while not disputing the relevance and importance of the testimony Defendants are seeking, the Army and the Air Force contend that, absent a stay, they will suffer harm by having to engage in "preparation for Rule 30(b)(6) depositions [that] would be burdensome, distracting military personnel from their other important duties." (ECF No. 737 at 2).  The argument that the Army and the Air Force will have to divert resources to prepare deposition witnesses, however, "does not demonstrate irreparable harm sufficient for the imposition of a stay."  N.R.D.C., 884 F. Supp. 2d at 123.  While it is true that, absent a stay, the Army and the Air Force must begin to prepare witnesses for the depositions, that "is true whenever a party objects to a magistrate judge's discovery order, and therefore, is not sufficient, standing alone, to demonstrate a substantial injury required to obtain such a stay."  Pidwell, 2022 WL 443632, at *5 (collecting cases); see Strougo v. Barclays, 194 F. Supp. 3d 230, 234 (S.D.N.Y. 2016) ("[i]t is well-established by courts in the Second Circuit, however, that the

prospect of incurring litigation costs, even if substantial, is not sufficient to constitute irreparable injury"). Even in the context of a government agency, courts routinely find "meritless" the argument "that potentially wasted and diverted staff resources constitute[s] irreparable harm." Shays, 340 F. Supp. 2d at 48. Accepting the argument that the Army and the Air Force make here "would almost always result in a finding of irreparable harm whenever an agency was required to comply with a court order," such that "stays pending appeal would become routine, conflicting with the rule that such relief should be extraordinary." N.R.D.C., 884 F. Supp. 2d at 124.

Furthermore, by offering to provide written responses, the Army and the Air Force already committed themselves to expending some effort in providing information. The Court went to great lengths to limit not only the length but also the topics for the depositions—including limiting one topic to a "yes" or "no" answer (ECF No. 733)—to minimize the burden on the Army and the Air Force in preparing their witnesses. See Pidwell, 2022 WL 443632, at *2 (noting that court-imposed limitations on "time and scope" of discovery requests alleviated potential harm to party seeking stay pending resolution of objections to magistrate judge's discovery order). The Army and the Air Force offer no declaration from an agency representative or other evidence substantiating their general assertion that preparing witnesses for the narrow depositions that the Court has authorized would cause an incrementally greater burden than providing the written responses they have already offered. See 3M I, 2020 WL 6438614, at *4–5 (finding that government's failure to "present[] an affidavit or other evidence in support of its claim of undue burden" was "alone [] a basis to reject" that assertion).

Finally, the cases on which the Army and Air Force rely do not support a finding of irreparable harm. (ECF No. 737 at 2). In Great Am. Ins. Co. of N.Y., the court recognized only that

preparing a Rule 30(b)(6) witness "may be an onerous task," but, as noted above, recognized that the Rules "do not permit" substitution of written answers for a deposition.  251 F.R.D. at 539.  In Moore v. Armour Pharm. Co., the court declined, in the height of the AIDS epidemic, to require "one of the CDC's leading AIDS researchers," to sit for a deposition that would have required "weeks, if not months" of preparation and would have diverted him "from doing research that might save numerous lives."  927 F.2d 1194, 1197–98 (11th Cir. 1991).  The Court has the utmost respect and appreciation for the role of the Army and the Air Force in defending the United States, but, in contrast to Moore, they have simply not shown, by declaration or documentary evidence, that preparing two witnesses for less than eight hours of deposition testimony on a handful of topics will substantially impede an important governmental function.  These circumstances are therefore also distinguishable from those in A.R. Peace Ctr. v. A.R. Dep't of Pollution Control, where a stay permitting an incinerator to operate under continued monitoring by the EPA would "not harm, and [might] in fact benefit, other interested parties and the public interest."  992 F.2d 145, 147 (8th Cir. 1993).

Thus, by offering only "generalized assertions" and "sweeping statements" about the burden of preparing witnesses for depositions, the Army and the Air Force have failed to establish irreparable harm absent a stay.  3M I, 2020 WL 6438614, at *4.

### 3.  Irreparable harm to Defendants

Because the Army and the Air Force have not established the first two "most critical" factors for a stay, "little more needs to be said as to the second two."  Duka v. U.S. S.E.C., No. 15 Civ. 357 (RMB) (SN), 2015 WL 5547463, at *7; see Nken, 556 U.S. at 433 (explaining that

the first two factors "are the most critical").  The Court will briefly address the remaining factors.  See Strougo, 194 F. Supp. 3d at 234.

The Army and the Air Force contend that there is no harm to Defendants given the six-year pendency of this action and Defendants' delays in seeking the depositions and challenging the denials.  (ECF No. 737 at 2).  Defendants respond that a stay of the depositions will substantially injure them in two respects:  (i) Defendants will continue to rest under the cloud of the "meritless allegations" impacting their "reputations and business interests," and (ii) they "will be prejudiced by having been forced to serve opening and rebuttal expert reports, take expert depositions, and potentially brief summary judgment without a full record from" the Army and the Air Force.  (ECF No. 738 at 3).  Defendants also dispute the accusations of delay, asserting that the Army and the Air Force "forced Defendants to exhaust all means of discovery before seeking Rule 30(b)(6) depositions" and "strung out negotiations" about the Touhy requests.  (Id.)

Defendants undoubtedly have an interest in this action proceeding expeditiously.  Cf. Strougo, 194 F. Supp. 3d at 234 (recognizing harm from delays and additional litigation expenses); Thornton v. Davita Healthcare Ptrs., Inc., No. 13 Civ. 573 (RBJ) (KMT), 2013 WL 5567560, at *2 (D. Colo. Oct. 8, 2013) (recognizing parties' "right to proceed expeditiously" toward resolution).  Defendants do not specifically assert, however, a financial hardship or increased litigation expense if the depositions are delayed while Judge Gardephe considers the Objections.  Thus, the Court finds that the harm to Defendants "is a neutral factor in this analysis."  Strougo, 194 F. Supp. 3d at 235.

### 4. **Public interest**

While the Army and the Air Force are correct that their interest "is the public interest," (ECF No. 737 at 2 (quoting Pursuing Am.'s Greatness v. F.E.C., 831 F.3d 500, 511 (D.C. Cir. 2016)), that is not the sole public interest implicated by this dispute. Rather, "there is a public interest in resolving matters quickly." Strougo, 194 F. Supp. 3d at 235. Staying the depositions—which likely would not occur until after the parties complete expert discovery this fall (ECF No. 705)—could cause Defendants to request to reopen discovery, thus further delaying dispositive motions and trial, to the detriment of Plaintiffs—with whom the interests of the Army and the Air Force are aligned—as well. Further, the Court's finding that the Army and the Air Force have failed to demonstrate a likelihood of success in the Objections "weaken[s] [their] argument that judicial efficiency would favor a stay." Strougo, 194 F. Supp. 3d at 235. Thus, this factor is neutral, if not weighing against granting a stay.

\*      \*      \*

In sum, because the first two factors are the most critical and the Army and the Air Force failed to carry their burden, the Court finds that a stay of the Rule 30(b)(6) depositions required by the Aug. 1 Order is not warranted. See Pidwell, 2022 WL 443632, at \*5 (denying stay where first two factors not met); In re NTL Inc. Sec. Litig., No. 02 Civ. 3013 (LAK), 2006 WL 1167848, at \*1 (S.D.N.Y. May 3, 2006) (denying stay pending resolution of objections to magistrate judge's decision).

### IV. **CONCLUSION**

For the reasons set forth above, the Stay Motion is DENIED. The Clerk of Court is respectfully directed to close ECF No. 737.

Dated:        New York, New York
              August 25, 2023

                              SO ORDERED.

                              _____
                              SARAH L. CAVE
                              United States Magistrate Judge