**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
(212) 849-7485

WRITER'S EMAIL ADDRESS
rachelepstein@quinnemanuel.com

December 7, 2023

<u>VIA ECF</u>

Honorable Paul G. Gardephe
United States District Judge
United States District Court
40 Foley Square, Room 2104
New York, New York 10007

Re:   *Monterey Bay Military Housing LLC, et al. v. Ambac Assurance Corporation, et al.*,
<u>No. 19-cv-09193 (PGG) (SLC)</u>

Dear Judge Gardephe:

We write on behalf of Defendant Ambac Assurance Corporation ("Ambac") to respectfully request a premotion conference regarding Ambac's anticipated motion for summary judgment, pursuant to Rule IV.A of Your Honor's Individual Practices for Civil Cases. Ambac further joins in and adopts the letter submissions filed by Defendants Chetan Marfatia, Dan Ray, and the Jefferies Entities in connection with their respective summary judgment motions.

In this putative RICO action, Plaintiffs sued Ambac and its codefendants for fraud and related claims. But Plaintiffs do not contend that Ambac made any misrepresentations to them. This dooms Plaintiffs' fraud and fraud-based RICO claims. Plaintiffs' conspiracy and aiding-and-abetting claims likewise fail because no reasonable factfinder could conclude that Ambac was even aware of, let alone that it facilitated, alleged wrongdoing by others. Now that discovery has concluded, the record is clear that Ambac should be granted summary judgment for at least the reasons summarized below.

**<u>Background</u>:** Plaintiffs are 18 developer-operated entities, formed in connection with the Military Housing Privatization Initiative of 1996 ("MHPI"), that operate 16 privatized military housing projects. Each Plaintiff was formed by one of four large, sophisticated private developers: Balfour Beatty Communities ("BBC"); Corvias Group, LLC ("Corvias"); Michaels Military Housing ("Michaels"); and Clark Realty Corporation, LLC ("Clark").

During the relevant time period (roughly 2002 to 2008), these sophisticated developers were involved in establishing and operating dozens of other non-plaintiff MHPI projects, amassing substantial expertise in the financial market for MHPI developments. Each Plaintiff project obtained financing from Defendant GMAC, which subsequently became Capmark, certain assets

of which were later acquired by Jefferies Mortgage Finance, Inc. (collectively, the "Financing Firms"). For these projects, the developers chose the Financing Firms following a rigorous competition that involved the solicitation and evaluation of proposals from multiple major financial institutions, including Goldman Sachs, Bank of America, and the like. In their other, non-plaintiff MHPI deals, the Plaintiffs' developers selected one of the Financing Firms' competitors. In every deal, all parties, including the sophisticated developers, were represented by counsel and advised by experienced internal and external experts. The terms of the deals were set forth in heavily negotiated agreements spanning thousands of pages. The basic structure of the at-issue deals here was simple: the Financing Firms loaned money to the Plaintiffs to finance the development and operation of the military housing projects. The Financing Firms then securitized the loans and sold those securities to sophisticated, qualified investors such as Freddie Mac.

In each of these Plaintiff projects, Ambac had a limited role. It provided insurance to secure Plaintiffs' repayment of the loans, rendering the securities more attractive to the marketplace as safer investments. The last of the Plaintiff projects involving Ambac closed in 2008.

Having successfully closed each of the many Plaintiff projects on terms that Plaintiffs deemed the most competitively attractive, Plaintiffs filed this action in 2017. They assert that, before each deal closed, the Financing Firms' key representative, Defendant Dan Ray, made extracontractual promises to provide lower interest rates, even though such alleged promises appear nowhere in the governing contracts, and that those promises give rise to fraud, RICO, and breach of fiduciary duty claims. Plaintiffs further claim that Ray permitted Ambac to charge above-market insurance premiums and that Ambac and the Financing Firms acted in concert.

As against Ambac, Plaintiffs assert claims for fraud by misrepresentation, fraud by omission, conspiracy to commit fraud, aiding and abetting breach of fiduciary duty, RICO, and RICO conspiracy.[1]

**Statute of Limitations:** As an initial matter, Plaintiffs' claims are time-barred. RICO claims are subject to a four-year limitations period that begins to run "even where the full extent of the RICO scheme is not discovered until a later date, so long as there were 'storm warnings' that should have prompted an inquiry." *World Wrestling Ent. v. Jakks Pac., Inc.*, 328 F. App'x 695, 697 (2d Cir. 2009); *see also, e.g., Koch v. Christie's Int'l PLC*, 699 F.3d 141, 150-51 (2d Cir. 2012). Plaintiffs' other claims are subject to a limitations period that expires after the longer of six years or two years after the Plaintiff is on inquiry notice, at the longest (*i.e.*, even ignoring the possible application of New York's borrowing statute); the inquiry notice standard largely mirrors the standard governing RICO claims. CPLR § 213(8); *Koch*, 699 F.3d at 155.

---

[1] This Court dismissed the claims of Plaintiffs Lackland and Sill against Ambac, as Ambac did not provide services to those projects, as well as all Plaintiffs' substantive claims for breach of fiduciary duty against Ambac. *See* Dkt. 311 at 44. Separately, Plaintiffs have affirmatively withdrawn all claims related to the purported overcharging of deal expenses, Dkt. 222 at, *e.g.*, ¶ 20, manipulation of the credit ratings assigned to their loans, *id.* at, *e.g.*, ¶¶ 163-172, and Ambac's purported inducement of them to purchase "unnecessary" surety bonds, *id.* at, *e.g.*, ¶¶ 18-19, which allegations had formed the centerpiece of their complaint against Ambac.

The record in this case establishes beyond any dispute that the Plaintiffs' developers gained knowledge that was more than sufficient to impose, at a minimum, a duty to inquire well outside the applicable limitations periods. *See Koch*, 699 F.3d at 152. As an example, as of August 7, 2005—more than *ten years* before Plaintiffs filed suit— ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. Similarly, another banker informed individuals within Michaels, which backs the Leavenworth project, on October 17, 2008, that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ MHPI_00215419. Corvias, meanwhile, was aware as of November 2005 that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ MHPI_00038809. In 2011, Corvias discovered what its CFO characterized as a ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ MHPI_02843715. And, as of August 13, 2009, key individuals within BBC learned ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ MHPI_00283157. Moreover, the sophisticated developers received contemporaneous market intelligence regarding credit spreads, insurance pricing, and other transaction features that they contend the Financing Firms overcharged them for and therefore had more than sufficient information to assess whether the Financing Firms had provided them with "market" pricing.



Similarly, while Plaintiffs alleged that the so-called "stealth" structure was a means of concealing Ambac's role from them, in reality, Ambac's role in those transactions was far from stealthy: over the course of discovery, each project that obtained financing under that structure has admitted to contemporaneously knowing that Ambac insured its debt and the rates that Ambac charged.

**Fraud By Misrepresentation:** To make out a claim for fraud by misrepresentation, a plaintiff must prove: (1) a misrepresentation of material fact, (2) scienter, (3) intent to defraud, (4) justifiable reliance, and (5) damages as a result of such reliance. *See, e.g., Marcus v. AT&T Corp.*, 138 F.3d 46, 63 (2d Cir. 1998). Plaintiffs' claims against Ambac fail as to each element.

While Plaintiffs alleged in their complaint that Ambac and its employees made certain misrepresentations to them, in their latest responses to Ambac's contention interrogatories, Plaintiffs did not identify a *single* misrepresentation by Ambac or anyone affiliated with it. Nor, for that matter, did any of the 26 Plaintiff witnesses testify to a single misrepresentation made by Ambac in their depositions. At one point, some Plaintiffs contended, without any identified evidentiary support (and none exists), that Ambac "presented [its] rates for credit enhancement as competitive market rates." But the record demonstrates beyond any genuine factual dispute that Ambac's rates were, in fact, competitive. Moreover, a promise to deliver "competitive rates" is classic puffery that cannot support a claim of fraud. *See, e.g., Mirkin v. Viridian Energy, Inc.*, 2016 WL 3661106, at *6 (D. Conn. July 5, 2016).

Further, any reliance on that representation would be objectively unreasonable: the developers underlying each Plaintiff were sophisticated market participants who received detailed information regarding prevailing credit enhancement rates from multiple competing sources and therefore could independently evaluate the competitiveness of Ambac's rates. *See, e.g., Stone v. Sutton View Cap., LLC*, 2017 WL 6311692, at *3 (S.D.N.Y. Dec. 8, 2017). Plaintiffs similarly cannot establish damages because, as discussed above, Ambac's rates were, in fact, competitive.

Indeed, the Monterey project obtained quotes from both Ambac and its only competitor at the time, and the proposed rates were identical.

**Fraud by Omission:**  Plaintiffs' argue, in principal part, that Ambac failed to disclose a so-called "exclusive" relationship between the Financing Firms and Ambac.  Even if there were such a relationship, the claim is unsustainable because Plaintiffs cannot establish that Ambac owed it a duty of disclosure.  This Court has already concluded that Plaintiffs failed to allege a fiduciary relationship between themselves and Ambac.  *See, e.g.*, *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 179 (2011) (affirming dismissal of complaint for fraud premised on omission that was "devoid of facts indicating any connection . . . that would give rise to a fiduciary duty").  And Plaintiffs identify no other source for a cognizable duty of disclosure.  Ambac is thus entitled to summary judgment as to this claim.

Further, Plaintiffs could not reasonably have relied on the alleged omissions to their detriment because the developers underlying nearly every Plaintiff were well aware of the close working relationship between Ambac and the Financing Firms.  Moreover, while the Plaintiffs claim that the so-called "stealth structure" was an artifice to conceal the purported exclusive relationship and Ambac's involvement in the financing structure from them, as discussed above, each Plaintiff has admitted that it knew, contemporaneously, that Ambac would or did insure their debt, as well as the rates that it would charge.

**Fraud Conspiracy:**  To sustain a claim for conspiracy to defraud, a plaintiff must prove a primary fraud as well as: (1) an agreement to commit the fraud; (2) an overt act; (3) intentional participation in the furtherance of the plan or purpose; and (4) damages.  *See, e.g.*, *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 176 (2d Cir. 2012). Plaintiffs' claim that Ambac and the Financing Firms conspired to defraud them fails for multiple independent reasons.

Plaintiffs' primary claim is that the Financing Firms defrauded them in connection with promised interest rates.  As the letter-motion submitted today by Dan Ray demonstrates, the record thoroughly undermines this claim.  But the record is even more devoid of any evidence that Ambac was aware of any such promises or misrepresentations.  There is no evidence that Ambac had any awareness of the relationship between certificate pricing and loan interest rates, or of any representations made in any responses to requests for proposals ("RFP responses") that the Financing Firms submitted, which are the sources of nearly all of Plaintiffs' claims of misrepresentation.  Despite Plaintiffs' bare assertion in their interrogatory responses that Ambac and GMAC developed the Financing Firms' loan structure and RFP responses "jointly," there is no evidence in the record that Ambac even *saw* any of the Financing Firms' RFP responses, much less that it conspired in connection with them or any other relevant aspect of the structure of each Plaintiff transaction.

**RICO and RICO Conspiracy:**  A substantive violation of 18 USC § 1962(c) requires proof of "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. . . . The pattern of racketeering activity must consist of two or more predicate acts of racketeering." *Lundy v. Cath. Health Sys. of Long Island*, 711 F.3d 106, 119 (2d Cir. 2013).  Where, as here, wire and/or mail fraud comprise the purported predicate acts, a Plaintiff must prove "(i) a scheme to defraud (ii) to get money or property (iii) furthered by the use of interstate mail or wires. . . . To make out such a scheme [to defraud], a plaintiff must provide proof of a material misrepresentation."

4

*Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124-25 (2d Cir. 2018) (citation omitted). "[A]n omission cannot give rise to a claim of mail or wire fraud liability absent a duty to disclose." *Bongiorno v. Baquet*, 2021 WL 4311169, at *21 (S.D.NY. Sept. 20, 2021) (citation omitted).

As discussed above, no Plaintiff contends that Ambac made any affirmative misrepresentation to them, nor can Plaintiffs establish any duty to disclose, as required to support a claim premised on a fraudulent omission. Plaintiffs likewise cannot establish that Ambac participated in any such alleged scheme carried out by any other defendant. In the absence of any support for any of the claimed predicates of fraud, Ambac is entitled to summary judgment on Plaintiffs' RICO claim.

Further, Plaintiffs' fraud theory premised on the charging of "non-market" interest rates is reliant on the Financing Firms' sale of securities and the price paid for those securities, after or contemporaneously with the respective loan closings, making their RICO claims subject to and barred by the PSLRA. "Section 107 of the Private Securities Litigation Reform Act—dubbed the 'RICO Amendment' [] bars any RICO action predicated on the purchase or sale of securities," and even if only "one predicate act alleges breaches of duty coincident with securities transactions, the whole scheme is subject to the RICO Amendment." *Zohar CDO 2003-1, Ltd. v. Patriarch Partners*, 286 F. Supp. 3d 634, 643 (S.D.N.Y. 2017); *see also* 18 U.S.C. § 1964(c). Because Plaintiffs' RICO claims require the securities sales as necessary features of the alleged frauds, securities law is implicated and the RICO claims are barred.

Moreover, there is no evidence that Ambac conspired with another defendant to violate RICO or took any actions in furtherance of any such conspiracy. *See, e.g., Bayshore Cap. Advisers, LLC v. Creative Wealth Media Fin. Corp.*, __ F. Supp. 3d __, 2023 WL 2751049, at *28 (S.D.N.Y. Mar. 31, 2023) (setting forth elements of RICO conspiracy). Moreover, Plaintiffs cannot establish a substantive violation of Section 1962(c), as is necessary to sustain a conspiracy claim, because, as discussed in the preceding section, they can establish neither a misrepresentation nor any injury caused by any purported misrepresentation. *See FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 458 (S.D.N.Y. 2014).

**Aiding and Abetting Breach of Fiduciary Duty:** A claim for aiding and abetting breach of fiduciary duty requires proof of: (1) a primary breach of fiduciary duty, (2) knowledge of the violation on the part of the aider and abettor, and (3) substantial assistance by the aider and abettor in achieving the violation. *See, e.g., Design Strategy v. Davis*, 469 F.3d 284, 303 (2d Cir. 2006). Like Plaintiffs' fraud conspiracy claim, Plaintiffs' aiding and abetting claim fails because Plaintiffs cannot establish that any defendant owed them fiduciary duties and, even if they could, there is no evidence that Ambac was aware of such duties, let alone that it provided any assistance in the breach of such duties.

Again, Ambac respectfully refers the Court to the letter-motion filed today by Dan Ray for a description of the many ways in which the claim of fiduciary duty violation fails as a matter of law and the record. But even if there remained some question about such violation, the record is clear that Ambac had no role in it. There is no evidence in any document or testimony suggesting that Ambac was aware of any representations regarding potential fiduciary duties contained in the Financing Firms' RFP responses or any other communication on which Plaintiffs rely.

Respectfully Submitted,

*/s/ Rachel E. Epstein*
Rachel E. Epstein
Quinn Emanuel Urquhart & Sullivan, LLP