UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MONTEREY BAY MILITARY HOUSING, LLC, MONTEREY BAY LAND, LLC, MEADE COMMUNITIES LLC, FORT BLISS/WHITE SANDS MISSILE RANGE HOUSING LP, RILEY COMMUNITIES LLC, FORT LEAVENWORTH FRONTIER HERITAGE COMMUNITIES, I, LLC, FORT LEAVENWORTH FRONTIER HERITAGE COMMUNITIES, II, LLC, CARLISLE/ PICATINNY FAMILY HOUSING LP, BRAGG COMMUNITIES LLC, FORT DETRICK/WALTER REED ARMY MEDICAL CENTER LLC, PICERNE-FORT POLK FUNDING, LLC, RUCKER COMMUNITIES LLC, STEWART HUNTER HOUSING LLC, SILL HOUSING, LLC, AETC HOUSING LP, AMC WEST HOUSING LP, LACKLAND FAMILY HOUSING, LLC, and VANDENBERG HOUSING LP,

                Plaintiffs,

- against -

AMBAC ASSURANCE CORPORATION, JEFFERIES MORTGAGE FINANCE, INC., JEFFERIES & COMPANY, INC., JEFFERIES LLC, JEFFERIES GROUP LLC, DANNY RAY, and CHETAN MARFATIA,

                Defendants.

**ORDER**

19 Civ. 9193 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        This is a civil RICO action. Plaintiffs are eighteen entities that constructed housing at U.S. military bases nationwide. Plaintiffs allege that Defendants — lenders, loan servicers, and insurers for Plaintiffs' military housing projects — "formed a RICO enterprise to illegally profit on the financing [of these projects]." The Second Amended Complaint ("SAC")

pleads substantive RICO and RICO conspiracy claims, as well as state law claims. (SAC (Dkt. No. 256) ¶¶ 4, 251-307)

In July and August 2024, each Defendant moved for summary judgment. (See Jefferies Mot. for Sum. J. (Dkt. No. 858); Ray Mot. for Sum. J. (Dkt. No. 874); Ambac Assurance Co. Mot. for Sum. J. (Dkt. No. 880); Marfatia Mot. for Sum. J. (Dkt. No. 909)) Plaintiffs moved for partial summary judgment on July 31, 2024. (See Pltfs. Mot. for Partial Sum. J. (Dkt. No. 867))

In connection with these motions and related briefs, supporting declarations, and Local Rule 56.1 statements, Plaintiffs and two non-parties have moved to seal more than 1,000 documents that are part of the summary judgment record. (See Pltfs. First Mot. to Seal (Dkt. No. 965); Pltfs. Second Mot. to Seal (Dkt. No. 1005); Pltfs. Third Mot. to Seal (Dkt. No. 1009); JLL First Mot. to Seal (Dkt. No. 958); JLL Second Mot. to Seal (Dkt. No. 999); NYL Mot. to Seal (Dkt. No. 1000))

Defendants have also filed motions to seal. In their motions, Defendants say that Plaintiffs and third parties have designated certain documents as confidential, and Defendants have therefore filed these documents in redacted form or under seal. Defendants do not take a position as to whether these documents are properly redacted or sealed, however. (See Jeffries Sealing Ltr. (Dkt. No. 857) at 1; Ray Sealing Ltr. (Dkt. No. 873) at 1; First Ambac Sealing Ltr. (Dkt. No. 876) at 1; First Marfatia Sealing Ltr. (Dkt. No. 908) at 2; Second Ambac Sealing Ltr. (Dkt. No. 934) at 2; Third Ambac Sealing Ltr. (Dkt. No. 955) at 1; Second Marfatia Sealing Ltr. (Dkt. No. 964) at 2) Defendant Ambac further states that it has filed certain documents with redactions in order to comply with Fed. R. Civ. P. 5.2(a) and Rule II(A) of this Court's Individual Rules of Practice, which require redaction of personal identification information,

financial account numbers, and information regarding minors.  (See First Ambac Sealing Ltr. (Dkt. No. 876) at 1; Second Ambac Sealing Ltr. (Dkt. No. 934) at 1; Third Ambac Sealing Ltr. (Dkt. No. 955) at 1)

I.     **LEGAL STANDARDS**

As a general matter, documents filed in connection with a motion "are judicial documents to which a presumption of immediate public access attaches under both the common law and the First Amendment."  Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 126 (2d Cir. 2006).  This "presumption of access . . . can be overcome only by specific, on-the-record findings that higher values necessitate a narrowly tailored sealing."  Id.

The Second Circuit has articulated a three-step process for determining whether documents should be placed under seal.  A court must first determine whether the presumption of access attaches.  A presumption of access attaches to any item that constitutes a "judicial document" — i.e., an "'item . . . relevant to the performance of the judicial function and useful in the judicial process.'"  Id. at 115 (quoting United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I")).  If the court determines that the item to be sealed is a judicial document, the court must then determine the weight of the presumption of access.  "'[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'"  Id. at 119 (quoting United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995) ("Amodeo II")).  "'Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance.'"  Id.  (quoting Amodeo II at 1049).

After determining the weight of the presumption of access, the court must "'balance competing considerations against it.'" Id. at 120 (quoting Amodeo II at 1050). "Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" Id. (quoting Amodeo II at 1050).

## II. ANALYSIS

Here, the materials at issue were submitted in connection with the parties' cross-motions for summary judgment, and are clearly "judicial documents." There is thus a strong presumption of access to these documents, because they will "directly affect" this Court's adjudication of this case. See, e.g., Standard Inv. Chartered, Inc. v. Nat'l Assn. of Sec. Dealers, Inc., No. 07 Civ. 2014, 2008 WL 199537, at *16 (S.D.N.Y. Jan. 22, 2008) ("Motion papers are judicial documents and are thus subject to a strong presumption of access under the First Amendment."). To rebut the strong presumption of public access that applies here, the parties must offer specific facts "'demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" Lugosch, 435 F.3d at 120 (quoting In re New York Times Co., 828 F.2d 110, 116 (2d Cir. 1987)).

The Court considers below whether the parties have made the showing necessary to justify their sealing requests.

### A. Plaintiffs' Sealing Requests

Plaintiffs seek to seal three categories of documents that Plaintiffs describe as (1) "Sensitive Business Documents"; (2) "Military Base Parcel Descriptions"; and (3) "Materials Related to Internal Investigations." (Pltfs. First Mot. to Seal (Dkt. No. 965) at 2-5)

4

1. **"Sensitive Business Documents"**

As to the alleged "sensitive business documents," Plaintiffs seek to seal or redact hundreds of documents, including loan agreements, loan origination agreements, commitment letters (in draft and final form), project funding draw requests, developer responses to requests for qualifications, project debt proposal comparison analyses, limited partnership agreements, operating agreements, community development and management plans, master development and management agreements, property management agreements, servicing and lockbox agreements, cost data, and documents discussing estimated financial returns.  (Id. at 2-3)

In arguing that these hundreds of documents should either be redacted or sealed in their entirety, Plaintiffs offer two and a half pages of argument.  For example, Plaintiffs assert that these documents "contain sensitive proprietary and trade secret information that industry competitors could readily utilize to gain an unfair advantage over [Plaintiffs and their affiliates] in bidding for future housing development projects and management opportunities."  (Id. at 2) But Plaintiff's motion contains no document-level argument or justification for sealing.  (Id.)

Given Plaintiffs' failure to provide document-level justifications for sealing these hundreds of documents, this Court cannot make "specific, on-the-record findings that higher values necessitate a narrowly tailored sealing."  Lugosch, 435 F.3d at 126.  Accordingly, the motion to seal or redact the alleged "sensitive business documents" listed in Appendix A to Plaintiff's First Motion to Seal (Dkt. No. 965) is granted only as to the Fed. R. Civ. P. 5.2 personal identification and financial information they contain, such as home addresses, phone numbers, and banking information.[1]  (See Pltfs. First Mot. to Seal (Dkt. No. 965) at 14, 18)  The

---

[1]  Redaction is appropriate as to this material because the relevant privacy interests outweigh the presumption of public access.  See Farris v. Avon Prod., Inc., No. 23-CV-02023 (LAK)(SN), 2024 WL 4441811, at *4 (S.D.N.Y. Oct. 7, 2024) ("Typically, sealing of personal information

motion to seal or redact documents listed in Appendix A to Plaintiff's First Motion to Seal (Dkt. No. 965) is otherwise denied without prejudice. Any new motion for sealing as to Appendix A documents will comply with this Court's directives set forth in Section III below.

### 2. **"Military Base Parcel Descriptions"**

Plaintiffs seek to redact forty-six documents that contain information concerning "military base and parcel locations," and to file under seal another document that contains such information. According to Plaintiffs, these documents — listed in Appendix B to Plaintiff's First Sealing Motion (Dkt. No. 965) — "describe the precise locations of individual housing parcels, which identify more specifically the specific communities on base and the approximate locations of individual servicemember homes." (Pltfs. First Mot. to Seal (Dkt. No. 965) at 4)  Plaintiffs contend that "this information is not of public interest and should be sealed to protect individual privacy concerns as well as military security." (Id.)

This Court finds that the privacy and security interests of the military and individual service members living on base outweigh any countervailing public interest in access to this information. See Swindell v. CACI NSS, Inc., No. 5:17-CV-00617-D, 2020 WL 698267, at *1 (E.D.N.C. Feb. 10, 2020) (granting motion to seal information concerning military personnel and military operations). Accordingly, the motion to seal Exhibit 129 to the

---

'such as . . . home addresses [and] personal phone numbers' is warranted unless that information has bearing on issues before the court.") (quoting Anderson v. New York City Health & Hosps. Corp., No. 16CV1051GBDKHP, 2020 WL 1047054, at *3 (S.D.N.Y. Mar. 4, 2020)); Averbach v. Cairo Amman Bank, No. 19-CV-0004-GHW-KHP, 2023 WL 4144758, at *3 (S.D.N.Y. June 23, 2023) ("Courts have recognized a privacy interest in certain banking information, particularly where such information may reveal sensitive personal financial information that could be misused if publicly released or that may cause a personal safety issue or embarrassment to the customer.").

declaration of Rachel E. Epstein is granted, and redaction is authorized as to the remaining documents listed in Appendix B.  (See Pltfs. First Mot. to Seal (Dkt. No. 965) at 18)

### 3. "Materials Related to Internal Investigations"

Plaintiffs seek to seal five exhibits and to redact four exhibits that contain information related to an internal investigation conducted by lawyers for Balfour Beatty Communities, LLC ("Balfour") — a privatized military housing contractor — regarding claims that Balfour defrauded the U.S. military.  These documents — which include a discussion of Balfour's potential liability and litigation strategy (id. at 4) — are listed in Appendix C to Plaintiff's First Motion to Seal (Dkt. No. 965).  In arguing that redaction or sealing is appropriate as to these documents, Plaintiffs contend that "[m]aintaining the confidentiality of the details of such internal investigations is key to encouraging parties to initiate such investigation and to be forthright in such investigations."  (Id.)

Whether materials relating to an internal investigation should be sealed presents a fact-intensive inquiry.  See, e.g., Lytle v. JPMorgan Chase, 810 F. Supp. 2d 616, 624 (S.D.N.Y. 2011) (motion to redact documents generated as part of internal investigation; denying motion as to "the names of the individuals whose conduct [JPMorgan Chase] investigated in response to [plaintiff's] complaints regarding alleged harassment and discrimination"); Ottati v. City of Amsterdam, No. 606CV1370NPMDEP, 2010 WL 11570492, at *1, *8 (N.D.N.Y. Jan. 25, 2010) (in a sex discrimination case, granting motion to unseal defendant's internal investigation report concerning plaintiff's allegations, which had been filed in connection with cross-motions for summary judgment); Byrne v. Yale Univ., Inc., No. 3:17-CV-1104 (VLB), 2020 WL 1820761, at *2-4 (D. Conn. Apr. 10, 2020) (denying motion to seal internal investigation report; although "preserving confidentiality to promote robust internal investigations" is a "compelling" interest,

sealing the entire report was not a "narrowly tailored" remedy); Lockwood v. Dunkirk City Sch. Dist., No. 21-CV-941-LJV, 2024 WL 1832488, at *2 (W.D.N.Y. Apr. 26, 2024) (granting motion to seal an internal investigation report to protect "the privacy interests of individuals who are not party to this lawsuit and the potential chilling effect that disclosure might well have on future investigations of this kind").

Here, Plaintiffs' arguments as to why the internal investigation materials should be sealed or redacted are conclusory, unsupported by case law, and not document-specific.

Exhibit 112 is the deposition transcript of Leslie Cohn, a Balfour employee. Plaintiffs seek to redact a single question and answer from the deposition, in which Cohn is asked whether she previously read an excerpt from a letter Balfour's lawyer sent to the U.S. Department of Justice ("DOJ"). Plaintiffs have not explained why disclosure of this testimony would compromise the integrity of the internal investigation or the confidentiality interests of any person or entity. Accordingly, Plaintiffs' motion to redact Exhibit 112 is denied.

Exhibits 143 and 186 contain testimony from the deposition of Louis DeRogatis, a Balfour employee, regarding DOJ's investigation of Balfour. The details of DOJ's investigation of Balfour are public. See Justice Department Announces Global Resolution of Criminal and Civil Investigations with Privatized Military Housing Contractor for Defrauding U.S. Military, Dep't of Just. (Dec. 22, 2021), https://www.justice.gov/opa/pr/justice-department-announces-global-resolution-criminal-and-civil-investigations-privatized. Accordingly, the motion to redact Exhibits 143 and 186 is denied. See Louis Vuitton Malletier S.A. v. Sunny Merch. Corp., 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) ("[T]here is no justification for keeping the information that has already been public under seal.").

Exhibits 151 and 196 are legal memoranda prepared by Kirkland & Ellis LLP discussing strategy for a possible amended complaint in an unnamed lawsuit brought by unnamed military housing projects against AIG and AIG Matched Funding Corp. Although the context for these memoranda has not been provided, the referenced lawsuit appears to concern alleged breaches of various guaranteed investment contracts. The memoranda have no apparent connection to an internal investigation; they instead appear to reflect legal advice regarding an unrelated case. Given that these memoranda were produced during discovery, any claim of privilege would appear to have been waived. See Sec. & Exch. Comm'n v. Alderson, 390 F. Supp. 3d 470, 479 (S.D.N.Y. 2019) ("Ordinarily, voluntary disclosure of an otherwise privileged document to a third party waives privilege.")  In any event, Plaintiffs have not explained what compelling interest would justify sealing these memoranda. Accordingly, the motion to seal Exhibits 151 and 196 is denied.

Exhibit 116 is a letter from Balfour's counsel to DOJ's Fraud Section regarding the risk of debarment and other collateral consequences that Balfour would face if it entered into a non-prosecution agreement or a deferred prosecution agreement, or pled guilty. Although the letter requests confidential treatment under the FOIA statute and contains legal argument, Balfour has since pled guilty, and Plaintiffs have not explained why this document should be sealed. Accordingly, the motion to seal Exhibit 116 is denied.

Exhibit 156 contains testimony from Leslie Cohn regarding Balfour's internal investigation and the time period it examined. Plaintiffs have not explained why disclosure of this testimony would compromise the integrity of the internal investigation or the confidentiality interests of any person or entity, especially given that Balfour has pled guilty. Accordingly, the motion to redact Exhibit 156 is denied.

Exhibit 322 is a letter prepared by the property management company for Monterey Bay Military Housing regarding an apparent plan to remediate mold in Monterey Bay housing. Exhibit 323 is a letter from Monterey Bay to Defendant Jeffries concerning Jeffries's alleged refusal to fund litigation being pursued by Monterey Bay. These documents do not appear to relate to an internal investigation, and Plaintiffs have not provided any explanation as to why these documents should be sealed. Accordingly, the motion to seal Exhibits 322 and 323 is denied.[2]

### B. Jones Lang LaSalle Americas' Sealing Requests

Non-party Jones Lang LaSalle Americas, Inc. has moved to seal more than a hundred documents that are part of the summary judgment record. (See Jones Lang First Mot. to Seal (Dkt. No. 958); Jones Lang Second Mot. to Seal (Dkt. No. 999))

In Jones Lang's first sealing motion, it seeks to seal an email chain regarding criteria for potential project lenders, including projections regarding Ft. Meade's post-debt sale financials, as well as a U.S. Army memorandum regarding Ft. Meade's privatization. (Jones Lang First Mot. to Seal (Dkt. No. 958) at 1) In this motion, Jones Lang also seeks to withdraw its confidentiality designations as to two other documents. (Id.)

In its second sealing motion, Jones Lang seeks sealing as to certain documents that allegedly contain "confidential business information," including solicitations for military contracts; military contracts and internal communications regarding those contracts; requests for proposal response evaluations, debt competition analyses, and internal communications about the

---

[2] To the extent that Plaintiffs have moved to withdraw their sealing requests as to certain documents subject to Fed. R. Civ. P. 5.2(a) redactions (see Pltfs. Second Mot. to Seal (Dkt. No. 1005; Pltfs. Third Mot. to Seal (Dkt. No. 1009) at 1), Plaintiffs' motions to withdraw their sealing requests are granted. Plaintiffs are directed to make the necessary filings on the public docket by December 18, 2024.

same; project financials, financial statements, and internal communications about the same; and various reports that Jones Lang contends show its "summary and evaluation of project management meetings, draft lender RFPs, and its management of client portfolios." (Jones Lang Second Mot. to Seal (Dkt. No. 999) at 3) The documents that Jones Lang contends should be sealed are listed in Appendix A to its motion. Jones Lang also seeks to withdraw its confidentiality designations as to fifty-eight documents that were previously filed under seal. (Id.)

Jones Lang's requests to withdraw its confidentiality designations and for unsealing of certain documents are granted. Accordingly, Jones Lang will file on the public docket Exhibits 135 and 136 to the Scott S. Balber declaration (see Dkt. Nos. 861-164 to 861-166), and the exhibits listed in Appendix C to JLL's second sealing motion (see Dkt. No. 999 at 14-16) by December 18, 2024.

Exhibit 61 to the Balber declaration (see Dkt. No. 861-89) contains Jones Lang's internal communications evaluating criteria for potential project lenders, and detailed financial projections (including profit margins, fees, budgets, revenues, cash flows, and costs) regarding a project at Fort Meade. These internal communications are from 2002 — twenty-two years ago. (See id.) Because Jones Lang has not demonstrated that the disclosure of information from 2002 could cause it competitive harm in 2024, its application to seal Exhibit 61 is denied.

As to Exhibit 133 to the Balber declaration (see Dkt. No. 861-162), this document is a memorandum from the Department of the Army to other branches of the armed forces informing them of the privatization of housing at Fort Meade, which includes a table of the number of service members at Fort Meade as of November 21, 2000, separated by pay grade and branch of the armed forces. Jones Lang has not explained how this high-level information from

11

nearly twenty-five years ago would implicate any interest that would justify sealing. Accordingly, the motion to seal Exhibit 133 is denied.

As to the remaining documents listed in Appendix A to Jones Lang's second motion to seal — documents that Jones Lang contends contain "sensitive confidential business information" (see Dkt. No. 999 at 5-12) — Jones Lang has provided no document-level justifications for sealing any of these documents. Accordingly, this Court cannot make "specific, on-the-record findings that higher values necessitate a narrowly tailored sealing." Lugosch, 435 F.3d at 126. The motion to seal or redact the documents listed in Appendix A is therefore denied without prejudice. The contents of any new motion for sealing or redaction must comply with this Court's directives as set forth in Section III of this Order.

As to the documents in listed in Appendix B to Jones Lang's second motion to seal, Jones Lang previously marked these documents as confidential, but now abandons that designation and "defers" to Plaintiffs' request to file them under seal. (See Dkt. No. 999 at 3, 13) The documents listed in Appendix B to Jones Lang's second motion to seal are also listed in Appendix A to Plaintiffs' First Motion to Seal. As discussed above, this Court has denied Plaintiffs' motion to seal or redact the documents listed in Plaintiffs' Appendix A. Accordingly, the documents listed in Appendix B to Jones Lang's second motion to seal are ordered unsealed.

### C.   New York Life's Sealing Requests

Non-party New York Life Insurance Company has moved to seal ten pages that the parties have filed in various forms, including in expert reports. New York Life contends that these pages contain "internal and confidential memoranda concerning the evaluation of the potential transactions and [New York Life's] business processes and procedures." (NYL Mot. to Seal (Dkt. No. 1000) at 1) New York Life asserts that if these pages are made public, "this

information could impact [New York Life's] negotiations in future transactions, as other parties would have access to the process and procedure [that New York Life] employs." (Id. at 3)

The information that New York Life seeks to seal is twenty-one years old. New York Life has not explained how the disclosure of information that is twenty-one years old could cause it competitive harm. Accordingly, New York Life's motion to seal is denied.

D.    **Defendants' Sealing Requests**

As discussed above, in connection with their summary judgment filings, each Defendant moved to seal or redact certain documents referenced in their papers. Except as to Fed. R. Civ. P. 5.2(a) redactions, no Defendant has contended that sealing or redaction is appropriate as to any of these documents. Defendants instead filed these documents redacted or under seal in order to comply with Plaintiffs' or third parties' confidentiality designations. (See Jeffries Sealing Ltr. (Dkt. No. 857) at 1; Ray Sealing Ltr. (Dkt. No. 873) at 1; First Ambac Sealing Ltr. (Dkt. No. 876) at 1; First Marfatia Sealing Ltr. (Dkt. No. 908) at 2; Second Ambac Sealing Ltr. (Dkt. No. 934) at 2; Third Ambac Sealing Ltr. (Dkt. No. 955) at 1; Second Marfatia Sealing Ltr. (Dkt. No. 964) at 2)

Defendant Ambac's Fed. R. Civ. P. 5.2(a) redactions (see First Ambac Sealing Ltr. (Dkt. No. 876) at 1; Second Ambac Sealing Ltr. (Dkt. No. 934) at 1; Third Ambac Sealing Ltr. (Dkt. No. 955) at 1) are approved. Defendants' motions for sealing or redaction are otherwise denied.[3]

---

[3] To the extent any Defendant redacted or filed a document under seal due to a confidentiality designation of a third party other than Jones Lang or New York Life (see, e.g., First Ambac Sealing Ltr. (Dkt. No. 876), Ex. A at 5), any such third party has not complied with this Court's individual rules, which require that third parties requesting sealing or redactions must file a letter — within three days of the preliminary filing under seal — explaining the need for sealing or redaction. See Indiv. R. of Prac. II.B.

### III. FUTURE MOTIONS TO SEAL

If Plaintiffs or Jones Lang wish to file a new sealing motion, they will do so by **December 18, 2024**. Any such motion will include a spreadsheet (in native format)[4] detailing every document for which sealing or redaction is sought, with document-level justifications for sealing that comply with the Lugosch standard. The spreadsheet will include a row for each document and columns indicating: (1) the sealing request number; (2) the docket number of the sealed document; (3) the docket number of the public document; (4) the party that is seeking sealing; (5) the parent document of the document for which sealing or redaction is sought (e.g., Plaintiffs' Local Rule 56.1 Statement in Support of Plaintiffs' Motion for Partial Summary Judgment); (6) the exhibit number; (7) the location(s) of any redactions (or an indication that full sealing is sought); (8) the category of the document (e.g., sensitive medical information); (9) a description of the document; and (10) a justification for redaction or sealing that complies with the Lugosch standard. To the extent that any party seeks sealing or redaction as to a document containing information that is more than a decade old, that party will explain why sealing or redaction is appropriate given the stale nature of the information.

### IV. MISCELLANEOUS MOTIONS

Plaintiffs have moved to file forty-four exhibits in native format via hand delivery to this Court (See Dkt. No. 916), and for oral argument on Defendants' motions for summary judgment. (See Dkt. No. 969). The motion to file exhibits in native format via hand delivery is granted. The motion for oral argument is denied. The Court will notify the parties if it

---

[4] Spreadsheets are to be delivered to Chambers either by hand delivery of a USB-drive or by email to GardepheNYSDChambers@nysd.uscourts.gov.

concludes that oral argument concerning the motions for summary judgment would be productive.

## **CONCLUSION**

The parties' motions are granted in part and denied in part as set forth below:

| Dkt. No. | Ruling |
|---|---|
| 857 | Denied |
| 873 | Denied |
| 876 | Granted in part, denied in part |
| 908 | Denied |
| 916 | Granted |
| 934 | Granted in part, denied in part |
| 955 | Granted in part, denied in part |
| 958 | Granted in part, denied in part |
| 964 | Denied |
| 965 | Granted in part, denied in part |
| 969 | Denied |
| 999 | Granted in part, denied in part |
| 1000 | Denied |
| 1005 | Granted |
| 1009 | Granted |

Any new motion for sealing is due by **December 18, 2024.**

The Clerk of Court is directed to terminate the following motions: Dkt. Nos. 857, 873, 876, 908, 916, 934, 955, 958, 964, 965, 969, 999, 1000, 1005, and 1009.

Dated:  New York, New York
        December 11, 2024

SO ORDERED.

*Paul G. Gardephe* (signature)
Paul G. Gardephe
United States District Judge